<hr/>

## GRIGGS and others *vs.* HOWE and others.

Where the defense of usury is set up, the defendant is required to show a corrupt and illegal contract by which more than seven per cent was taken, for the use or loan of the money advanced.

He is bound to set up the contract in his answer, giving its terms, and the amount of the usurious premium or interest taken by the lender. And the usury must be proved as set up in the pleading.

Where an answer set up one entire contract for the discounting of two drafts for $1250 each, and the taking of the sum of $125 as premium or interest, and the proof made out two contracts, each at a discount of one-eighth of one per cent, for the time which would elapse before maturity, but the time for which the discount was taken, or the sum taken was not shown; *it was held* that the variance was fatal to the defense.

A decision of the court, at the trial, imposing terms as a condition of granting leave to amend an answer, will be deemed to be acquiesced in, unless an exception is taken, at the time.

Where two drafts were drawn in blank as to the amount, upon the defendants, and accepted by them, payable to the order of W., the maker, with the express understanding that the sums to be inserted should not in the aggregate exceed $1000, and W. exceeded and disregarded this limitation of his authority, and filled in the blanks in the drafts with the sum of $1250 each, and negotiated the drafts to the plaintiffs, before maturity, who paid him the money upon them without notice that W. had exceeded his authority; *Held* that under the circumstances, the plaintiffs were to be deemed bona fide holders for value, and that the commercial character of the paper would protect it, in their hands, from the defense that W. exceeded his authority.

*Held also,* that the acceptors having, themselves, put it into W.'s power to do the wrong, they could not be allowed to shift the loss from themselves, and cast it upon a bona fide holder for value. That of the two they were the least innocent.

APPEAL from a judgment entered at a special term. The action was brought against the defendants (partners under

the name of O. B. Howe & Co.) as acceptors of two several bills of exchange, drawn by H. L. Webb, dated June 9th, 1855, for $1250 each, payable at the North River Bank, at two and three months from date. The defendants, survivors of Herrick, answered separately, presenting the following points: 1. That O. B. Howe accepted the drafts in the name of the firm, as accommodation acceptors, without the consent or knowledge of the other defendants. 2. That they were accepted with the sum left blank, to be filled up by the drawer, but with the agreement that said drafts, together with another one accepted at the same time, were to be filled with sums which in the aggregate would not exceed $1000. 3. That Webb, without the knowledge or consent of any of the defendants, filled each of the drafts in suit with the sum of $1250, contrary to the agreement. 4. That afterwards, and before the drafts had inception, Webb transferred them to the plaintiffs at an usurious rate of interest, and that the plaintiffs are not holders in good faith.

On the trial, the defendants proved their allegations in reference to the manner of acceptance, and the filling up afterwards by Webb. It further appeared that Webb negotiated the drafts to the plaintiffs; the one at two months, at a discount of one per cent a day from the time of discount to maturity, and the other at one-eighth of one per cent a day for the same time. After the maturity of the drafts, Webb turned out as collateral a note of $2000 against the New York Barrel Manufacturing Company, which was prosecuted to judgment and execution by the plaintiffs, and the proceeds of sales under the execution were $1920.74. Of this, $1264.96 were credited on the drafts, the reduction being principally made by fees peculiar to the sheriff of New York. The defendants insisted that the reduction should be only the legal poundage and fees of the sheriff, but the circuit judge declined so to instruct the jury. The jury found a verdict in favor of the plaintiffs for $1264.96. The defendants moved, at a special

term, for a new trial. The motion was denied, and the defendants appealed.

*P. T. Woodbury,* for the plaintiffs.

*S. B. Cushing,* for the defendants.

*By the Court,* BROWN, J. Upon the trial of this action the jury found specially, as a fact in the case, that the drafts which were the subject of the action were not accepted by O. B. Howe & Co., the defendants, for the accommodation of Henry L. Webb, the drawer, merely, but were accepted for the purpose of taking up negotiable paper, on which the names of O. B. Howe & Co. were outstanding as indorsees or acceptors; such paper having been negotiated by them. All question therefore upon this appeal as to the character of the paper is put at rest by this finding of the jury.

The drafts were accepted in blank as to the amount, payable to Henry L. Webb, the maker's own order, with the express understanding that the sums to be inserted, in the aggregate should not exceed $1000. They were both dated on the 9th June, 1855, payable three months after date. He filled them up with the sum of $1250 each, and negotiated them to the plaintiffs before maturity, who paid him the money upon them. One of the defenses was usury, and under it the defendants were required to show a corrupt and illegal contract by which more than seven per cent was taken for the use or loan of the money advanced upon them. This contract, whatever it was, they were bound to set up in the answer, giving its terms and the amount of the usurious premium or interest taken by the lender. And the usury must be proved as set up in the pleading. (*Vroom* v. *Ditmas,* 4 *Paige,* 526. *New Orleans Gas Light Co.* v. *Dudley,* 8 *id.* 457. *Curtis* v. *Masten,* 11 *id.* 17. *Cloyes* v. *Thayer,* 3 *Hill,* 565. *Morse* v. *Cloyes,* 11 *Barb.* 100. *Gould* v. *Horner,* 12 *id.* 601.) The answer set up one entire contract for the discount of

both drafts, and the taking of the sum of $125 as premium or interest. The proof made out two contracts, each at a discount of one-eighth of one per cent per day, for the time which would elapse before maturity; but the time for which the discount was taken, or the sum taken, the witness did not know and could not state. This variance between the contract set out in the answer and that proved upon the trial was fatal to this branch of the defense. The counsel for the defendants made a motion to amend the answers, so that they should correspond with the proof. The court, after hearing both sides, granted this motion upon terms which the defendants refused to accept, and the trial proceeded. These terms were the payment of the costs intermediate the answer and the time of the motion, and that the cause go over until the next circuit. The defense in this respect had failed in its entire scope and meaning, for the usurious contract set up in the answer was not proved. The defendant asked leave to substitute the contracts, which he thought he had proved, for that which he had pleaded. This proposition was admissible only upon one condition—that the plaintiff should have an opportunity to disprove the substituted contracts, if he could. This implied a postponement of the trial to another circuit, and it was quite right it should be at the defendant's expense, as it was exclusively for his benefit. And hence the terms imposed by the court. No exception, however, was taken to this order and decision of the court.

The defendant now urges, as one ground for the reversal of the judgment, that the judge erred in imposing terms as a condition of granting leave to amend, because there was no proof that the plaintiffs were surprised or misled. If the defendants designed to rely upon this objection, they should have excepted to the ruling, at the time. The absence of an affidavit or proof might have been obviated on the spot. The decision of the court upon this point must, like its decision upon all other questions made at the trial, be deemed to be acquiesced in unless an exception is taken at the time.

(*Brown and others* v. *The Cayuga and Susq. R. R. Co.*, 12 *N. Y. Rep.* 486.)

There was a blank left in each of the drafts for the sums for which they were to be drawn, and Henry L. Webb was authorized to fill in the amounts, which were not in the aggregate to exceed the sum of one thousand dollars. He exceeded and disregarded this limitation of his authority, and filled in the blanks in the drafts with $1250 each. Under the circumstances of the case, the plaintiffs are to be deemed bona fide holders for value. The commercial character of the paper will protect it in their hands from the defense that Webb exceeded his authority. The defendants themselves put it into Webb's power to do this wrong, and they cannot be allowed to shift the loss from themselves and cast it upon a bona fide holder for value. Of the two they are the least innocent. In the case of the *Mechanics' Bank* v. *Schuyler and others,* reported in a note, 7 *Cowen*, 337, the court say: "Accordingly, if the amount be left in blank, any sum may be inserted; if the time of payment, it may be fixed at the pleasure of the holder. And in the hands of a bona fide indorsee, the indorser cannot question the transaction, though the blanks may have been filled in a manner entirely different from the understanding and expectation of the indorser who put his name upon the note." Reference is made to *Russel* v. *Langstaff*, (*Doug.* 514;) 5 *Cranch*, 151; 2 *M. & S.* 9; 4 *Mass. Rep.* 545. We are referred to the case of *Nazro* v. *Fuller*, (24 *Wend.* 374,) and also to *Bruce* v. *Westcott*, (3 *Barb. S. C. R.* 374,) as authorities against the validity of the drafts in controversy. These are cases of material alterations of promissory notes, perfect in themselves. The law is entirely settled that the alteration of a note or bill of exchange, in a material part, renders it wholly invalid, even in the hands of an innocent holder, against a party not consenting to such alteration. (*Chitty on Bills*, 10*th ed.* 182.) These drafts were not altered in a material part. The blanks for the sums for which they were to be drawn were to be filled in by the

Griggs *v.* Howe.

drawer. He exceeded the sum to which he was limited. But of this fact the indorsees had no knowledge. The consequences of this abuse of authority must fall upon those who created it, and not upon an innocent holder for value. It appeared in the progress of the trial that after the drafts had matured, Henry L. Webb delivered to the plaintiffs a note for two thousand dollars, made by the New York Barrel Manufacturing Company, as collateral security for the payment of the drafts. The plaintiffs prosecuted the note to judgment, and issued an execution, upon which the property of the company was sold, for the sum of $1920.74. From this sum there was deducted by the sheriff, for auctioneer's fees $108.79, store rent $118.57, and for sheriff's fees $94.64, making in all $321.98. There was also deducted by the attorneys who prosecuted the claim and attended to the collection of the money the further sum of $100, for their services. These deductions left the sum of $1498.76, which was realized by the plaintiffs and applied in part payment of the drafts in this action. The defendants insist that the sheriff's fees and charges for rent, and auctioneer's charges, are illegal and forbidden by the statute, and that there should be credited on account of the moneys collected upon the note the entire sum collected, deducting only $29.83, the legal sheriff's fees and poundage. This proposition the counsel for the defendants asked the court to deliver to the jury as the law applicable to this part of the case, which the court declined to do, and thereupon the defendants' counsel excepted. There was no proof that the note was to be collected at the expense of the plaintiffs, or that they were to contribute any part of the expenses of its collection. Webb says, in his evidence, that the proceeds of the sale were to be applied upon the drafts, and it was conceded that the net proceeds had been so applied. If the sheriff has retained in his hands a part of the proceeds of the sale for charges which are not strictly legal and chargeable, the plaintiffs are not responsible therefor, because the money has not been realized, and they are only to be charged

with the proceeds received by themselves or their attorneys. With respect to $100 retained by the attorneys who prosecuted the note, it appeared the New York Barrel Manufacturing Company put in two answers which were adjudged by the court to be frivolous, and the judgment was entered up without waiting to tax costs, and no costs were included in the judgment. Every practitioner will understand this. The answers were put in to effect delay and postpone the entry of the judgment. The action was against a corporation. It may have been of consequence to all concerned to obtain a speedy judgment, even at the expense of the real holder of the paper. The judge was right, I think, in refusing to instruct the jury that the defendants were entitled to credit upon the drafts for the whole amount of the sales upon the execution against the New York Barrel Manufacturing Company, "less the legal poundage and fees of the sheriff."

All the other requests made by the counsel for the defendants to the court for specific instructions to the jury, which were refused, and all their exceptions to the charge itself, are substantially disposed of in what I have already said.

The judgment should be affirmed.

[KINGS GENERAL TERM, February 13, 1860. *Lott, Emott* and *Brown,* Justices.]