George M. Griggs and others, Respondents, v. Otis B. Howe and others, Appellants.

Where the answer alleges as usury the fact, that plaintiffs at the time of discounting certain drafts, deducted therefrom $125, which was at the rate of two per cent per month, and it is proved on trial that the drafts were discounted at one-eighth of one per cent a day, there is such a variance between the allegations and proofs as to require amendment.

If, on application to amend the answer to correspond with the proofs, the plaintiffs claim to have been actually misled to their prejudice, and insist that the cause, in case of amendment, shall go over, and the court so order, the defendant, on refusing to amend upon such terms, and submitting to judgment, cannot, on appeal, object to the absence of proof on the part of the plaintiff that he was actually misled, nor to the terms of the court upon which the amendment was allowed.

This court can only review such decisions of the trial court as are excepted to.

It seems, to constitute a party a bona fide holder it is only necessary that he should have taken the paper for value advanced in the ordinary course of business.

This is an appeal by the defendants from a judgment of the Supreme Court rendered in favor of the plaintiffs in the second district.

The action was brought upon two drafts drawn by Henry L. Webb to his own order, and purporting to be accepted by the defendants under the firm name of O. B. Howe & Co., each dated June 9, 1855, for $1,250, one at two months and the other at three.

The defense was that the drafts had been accepted in blank for the accommodation of Webb, the drawer, and filled up by him for a greater amount than authorized, and that they were negotiated to the plaintiffs at a usurious rate of interest.

The cause was tried before Mr. Justice Lott and a jury at the Kings Circuit, in May, 1858, and on the trial the following facts appeared, to wit:

A few days prior to the date of the drafts, they were drawn at Elmira, without date or amount, and accepted by Otis B. Howe, in blank, in the name of O. B. Howe & Co.; for the accommodation of Webb on an agreement that they were not to be filled up for an amount exceeding $1,000. The drafts

were afterward filled up by Webb for a greater amount than he was authorized to do, without the knowledge of the defendants, and by him negotiated to the plaintiffs.

It appeared that Webb negotiated the bills to the plaintiffs at the rate of one-eighth of one per cent a day, which is at a rate something over forty-five per cent a year. The answer alleged that plaintiffs deducted $125 from the two drafts, which was at the rate of two per cent per month, or twenty-four per cent per year for the time the paper had to run.

It appeared also, on the trial, that after the maturity of the drafts, Webb turned out to the plaintiffs a note of $2,000, as collateral security for their payment. Upon this note a judgment was obtained by the plaintiffs on the 9th of April, 1856, for $2,023.25, and upon a sale of property upon an execution upon the judgment on the 7th of May, 1856, they realized and had paid to their attorney by the sheriff, $1,598.76.

The total proceeds of the sale realized by the sheriff was $1,920.74. From this the sheriff deducted, for auctioneer's fees, $198.79; for rent, $118.57; and sheriff's bill, $94.64; making a total of $321.98, and their attorney retained $100, which was deducted from the amount of the proceeds of the sale, and the balance of $1,498.79 was paid over to the plaintiffs.

The record then states that, at the close of the evidence, the defendants asked permission to amend their answers to conform to the facts in reference to the usury taken by the plaintiffs.

The plaintiffs' counsel then stated to the court that they were taken by surprise by the proposed amendments, and were prepared to meet only the allegations of usury set up in the answer; that an important witness, Lathrop, by whom they could disprove the allegations of usury as proposed to be amended, was absent, and asked the court that, if it ordered the answer to be amended, it should be upon the terms of the cause going over the term and the defendants paying the costs, intermediate the answer and the trial, and the court granted the motion on those terms, which the defendants declined to accept.

Thereupon the defendants requested the court to charge the jury, that the answer ·was broad enough to admit the proof of usury, and, if the jury find that more .than seven per cent was taken, they should find for the defendants. The judge refused, and the defendants excepted.

The judge was also requested to charge, that if the defendants were liable on the drafts, they should be crédited with the amount collected on the $2,000 note, less the legal poundage of the sheriff, and this was refused.

The judge thereupon charged the jury, that if the defendants failed to prove the agreement of usury as set forth in the answer, they failed in the defense on that point, and that proving a rate of interest beyond seven per cent is not, substantially, proof of the agreement set forth in the answer. To this the defendants excepted.

The judge further charged, that if the drafts in question were filled up by Webb for amounts beyond the auth·rity given by the acceptors, they were not for that reason vo'd as against the plaintiffs, if .they were *bona fide* holders. To which there was an exception.

The jury found for the plaintiffs, and the judgment thereon having been affirmed (31 Barb., 100), the defendants appeal.

*J. H. Reynolds,* for the appellants.

*L. Tremain,* for the respondents.

PECKHAM, J. The only questions presented in this case arise upon the charge and the refusal to charge of the judge. His refusal to charge that the answer was broad enough to admit the defense of usury, I think was right. The answer set up that the interest deducted by the plaintiffs, by agreement, on discounting the two drafts, was $125, which was at the rate of two per cent a month, or twenty-four per cent a year for the time the drafts had to run. The proof showed that the drafts were discounted at different times and by separate several contracts, and at a rate of interest of about one-eighth of one per cent a day. The amount received by

the drawers on the discount of both or of either of the drafts, the witness could not state, as he did not recollect the date of either discount. Here was certainly some variance. Two several contracts set up as one, and a large difference in the amount of interest reserved, between the proof and the answer.

The defendants' counsel seemed at first of the opinion that the variance was material, as they asked "permission to amend the answers to conform to the facts, in reference to the amount of usury taken."

The court granted the motion upon terms which the counsel declined to accept, and then insisted that the answers were sufficient without amendment.

Prior to the Code, this variance would have been fatal to the defense of usury in any court. (*Catlin* v. *Emiter*, 1 Kern., 373; *New Orleans G. L. & B. Co.* v. *Dudley*, 8 Paige, 457; *Morse* v. *Cloyes*, 11 Barb., 100; *Cloyes* v. *Thayer*, 3 Hill, 565.)

The Code provides a new rule as to the question of variance. It declares that "no variance between the allegation in a pleading, and the proof shall be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits." (Code, § 169.)

The plaintiffs in this case claimed to have been actually misled to their prejudice. It was not insisted by the defendants that any proof thereof should. have been given to the court as required by the Code, but without objection, it was apparently assumed that the statement was true, and on that assumption the amendment was granted upon terms, and no objection or exception was made or taken by the defendants. It is too late to object now either to the absence of proof of being misled, or to the decision of the court as to the terms upon which the amendment was allowed.

In the absence of any objection to the want of proof of being misled, it must be assumed that the parties assented to the truth of the statement, and to the propriety of a decision being made without such proof. The defendants had the

legal right to demand the proof as the Code provides, or they might waive the strict proof and accept a statement of counsel in lieu of proof; nor was any objection or exception taken to the decision of the court on the application to amend; of course that decision cannot be reviewed.

It was then legally decided that this was a material variance under the Code. . Proof to establish the defense of usury was therefore inadmissible under this answer.

The defendants insist here that these drafts having been filled up by the drawer for sums larger than he was authorized to do by the acceptors, are void as against any but *bona fide* holders, and that the plaintiffs are not *bona fide* holders. No such point was taken at the trial.

On the contrary the defendants insisted there, in various forms, that the drafts, under the circumstances, were forgeries, and were absolutely void. To the charge of the court that they were not void, but valid in plaintiffs' hands, if the plaintiffs were *bona fide* holders, the defendants excepted, though their counsel here properly concede that the proposition was legally sound.

The court, so far as the case shows, did not direct a verdict. It must be presumed, in the absence of any evidence to the contrary, that the court decided properly and charged legally. Indeed, if the charge or decision were otherwise, and no exception taken, this court could not review it or reverse for any such cause. This court can only review such decisions of a trial court as are excepted to.

It is insisted here that the plaintiffs are not *bona fide* holders. Whether they were or not, under the evidence, is an interesting question. The question of usury as such with all its penalties, is out of the case.

It seems to me quite clear that a party may be a *bona fide* holder of commercial paper, void for usury, and he may recover upon it, provided the usury is not pleaded. If a note, usurious in its inception in the hands of A., the payee who had exacted and received usurious interest on its discount, were then, before its maturity, passed to B. for full value advanced, in the ordinary course of business, I think

B. would be a *bona fide* holder, and would recover, unless usury were pleaded.

Banks are in the daily habit of discounting notes for their customers without a word of inquiry as to the origin or consideration of the note; occasionally they may take a note void for usury, or, by the statute, against betting and gaming. Still I think it cannot be denied that they are *bona fide* holders — yet even such holders cannot recover upon paper *void* for usury, or as given for a gaming debt, if such defense be pleaded. If not pleaded, as in the case at bar, but some other defense relied upon, the *bona fide* character of the holder would exclude that defense, unless it made the paper void.

If the holder himself had intentionally taken usury, I argue that he could not be deemed a holder in good faith. Such are the cases of *Ramsdell* v. *Morgan* (16 Wend., 574; *Dean* v. *Howell* (H. & Den., supplt., 39); *Keatgen* v. *Parks* (2 Sand., 60).

But suppose the holder did not give the full amount of the draft in purchasing, does it necessarily follow that he cannot then be a *bona fide* holder? Had these drafts been accepted for value, of course they could have been legally sold at any price. Had the drawer so represented them by authority of the acceptors, they could have been sold as any other chattel and the parties estopped from setting up usury. (*Holmes* v. *Williams*, 10 Paige, 326.)

Suppose the holder purchased the drafts at a usurious rate of interest in the honest conviction that they were business paper, but without any such representations by the drawer, would he then be a *bona fide* holder? There are authorities in the affirmative in *Gould* v. *Segee* (5 Duer, 270); *Mechanics' Bank of Williamsburgh* v. *Foster* (44 Barb., 87). Such may have been the purchase in this case. The facts disclosed on the trial leave it uncertain. The proof by the defendants simply showed that the drawer "negotiated these drafts to the plaintiffs" and the amount he received for them. The plaintiffs offered to prove "statements made to plaintiffs by the drawer at the time of the transfer" which the court

rejected on the defendant's objection; although it is quite clear that the transaction between the parties was usurious, and these drafts would have been void for that cause had that defense been pleaded. Possession of these drafts by the drawers was *prima facie* evidence of ownership for a good consideration. (*James* v. *Chalmers*, 2 Seld., 209.)

Had the plaintiffs a right to rely upon this or upon any other evidence of a like tendency, and purchase the drafts at their fair market value, subject only to the peril of usury if they were not business drafts and usury were pleaded? To constitute a party a *bona fide* holder, it is now only necessary that he should have taken the paper for value advanced in the ordinary course of business. He is not bound to make inquiries, nor to act upon circumstances which would put an ordinarily careful man upon inquiry, unless they are of such a character as to impeach the honesty of the holder. Gross negligence even has been held insufficient to impeach his holding, " where a party has given consideration for the bill." (*Goodman* v. *Harvey*, 4 Ad. & Ell., 870 ; *Bel. Branch of Ohio State Bank* v. *Hoge*, decided in this court last June Term, not yet reported, and cases there cited.)

I do not deem the decision of this point necessary to the determination of this case, and therefore express no opinion upon it.

The only other ground of error urged is that the court allowed a deduction from the amount of the proceeds of the judgment upon the security assigned to the plaintiffs," beyond the legal poundage and fees of the sheriff."

The gross proceeds of the sales were,........... $1,920 74
From which were deducted by the sheriff for auc-
    tioneer's fees,............................ 108 79
Rent, ....................................... 118 57
Sheriff's bill,................................ 94 64
Attorney's fees,............................. 100 00

    Total, ....................... $421 98

No special objection to any particular item was made — only the judge was requested to charge that no deduction

could be made "beyond the legal poundage and fees of the sheriff." Therefore, if either or any part of either of the other items might properly be deducted, the objection fails.

In entering up the judgment, no attorneys' fees were included and the judgment was not all collected, from insufficiency of property. It was entirely proper then to deduct a reasonable compensation for the attorneys — not entirely to be governed by the fee bill — but a sum proper as between attorney and client.

The judgment should therefore be affirmed, with costs.

Judgment affirmed.