## THE FARMERS' AND MECHANICS' NATIONAL BANK OF BUFFALO, Respondent, *v.* GERHARDT LANG, Appellant.

*Guaranty—construction of it—when a guarantor is not released by a renewal of a note—Usury—the proof of, must correspond with the allegations in the pleading—U. S. R. S., § 5198—the penalty given by it cannot be set up as a counterclaim.*

In October, 1874, one Weppner, who was engaged in business in Buffalo as a pork-packer, presented to the plaintiff, in the presence of the defendant, a paper signed by the latter, which, after reciting that Weppner desired to increase his facilities for obtaining money from the plaintiff, and proposed to pledge property in his possession to secure such loans and advances, provided as follows: "I do hereby promise and guarantee to said bank all such pledges of property, warehouse receipts, and other vouchers that may from time to time be given by said Frank Weppner as collateral security to said bank for advances, discounts and loans of money, and promise on my part, that the property so transferred and set over to said bank shall not be misapplied or diverted to any other purpose while such loans or advances remain unpaid to said bank, and if any default or misappropriation of the property so pledged shall be made, I do promise and agree to make good to said bank any deficiency, and fully satisfy the stipulations contained in any such receipts or other vouchers therefor, without requiring any notice to me of the several loans and discounts that may be made by said bank to said Weppner."

*Held,* that the defendant was, by the terms of the said instrument, not only bound to make good to the plaintiff any loss or deficiency caused by the misapplication or diversion by Weppner of property pledged to the plaintiff, but that he also undertook that Weppner actually had in his possession the property which he professed to pledge, and that he could not defend

an action brought against him upon the said agreement by showing that the property, for the value of which he was sought to be held, was not in existence at the time the receipts therefor were given to the plaintiff, or that the property described therein was worth much less than the receipts called for.

*Held,* further, that the fact that the notes, to secure the payment of which the receipts had been given, had been renewed by the plaintiff, and that the receipts had been taken from the old notes and attached to the new ones, did not affect the defendant's liability upon his guaranty.

The defendant set up in his answer the defense of usury, alleging that the plaintiff, in discounting the notes, charged interest at the rate of from ten to fourteen per cent. Upon the trial, he offered to prove that they were discounted at the rate of sixteen per cent.

*Held,* that the variance was fatal, and that the evidence was properly excluded.

The penalty of double the usurious interest paid, given by section 5198 of the U. S. Revised Statutes, to the person paying the same or to his legal representatives, cannot be set up as a counter-claim in an action brought upon the instrument or evidence of debt, but can only be recovered in a penal action brought specially for that purpose.

Appeal from a judgment of the Superior Court of Buffalo, entered upon the verdict of a jury in favor of the plaintiff, rendered by the direction of the court. After appeal brought, the case was certified to this court, because of the incapacity of two of the judges of the Superior Court to hear the appeal.

*W. H. Gurney,* for the appellant. The gist of this agreement is that the defendant guaranteed that the property pledged by Weppner to the bank should not be applied to any other purposes than those stated in the instrument. His contract is not operative until it is shown that there was an *actual pledge* or *transfer of property* by Weppner to the plaintiff, and a misappropriation of such property by Weppner. (*Pratt* v. *Canton Cotton Co.,* 51 Miss., 470; *Walker* v. *Tucker,* 70 Ill., 527; *New Haven Bank* v. *Mitchell,* 15 Conn., 206; 5 Wait's Actions and Defenses, 189.) The court erred in excluding the offer to prove the plaintiff had extended the time of payment of the notes without the consent of the defendant, the guarantor; so doing discharges the guarantor. (*Colemard* v. *Lord,* 15 Wend., 329; *Hunt* v. *Smith,* 17 Id., 176; *Wilson* v. *Roberts,* 5 Bosw., 100; *Leeds* v. *Dunn,* 10 N. Y., 469; 3 Kent's Comm., 124, and note E; *Black* v. *Everett,* L. R.; 1

Q. B. D., 669; *S. C.*, Eng. Rep., 104; *Carpenter* v. *King*, 9 Metc., 511; *Thornburgh* v. *Madsen*, 33 Iowa, 380; *Merchants' Bank* v. *Rudolf*, 5 Neb., 527; 5 Wait's Actions and Defenses, 227–238; *Lang* v. *Brevard*, 3 Strobh., 59; *Jones* v. *Kerr*, 8 Ala., 580; *Nashville Bank* v. *Campbell*, 7 Yerg., 353; *Sibley* v. *McAllaster*, 8 N. H., 389; *Villais* v. *Palmer*, 67 Ill., 204; *Clapton* v. *Spratt*, 52 Miss., 281; *Burke* v. *Norman*, 7 Bush, [Ky.] 582.) Extension of the time of payment of the notes releases the defendant. The surety is discharged whether or not he is damaged by such extension. (*Lime Rock Bank* v. *Mallet*, 34 Me., 547; *Gifford* v. *Allen*, 3 Metc., 255; *Wright* v. *Bartlett*, 43 N. H., 548; *People's Bank* v. *Pearsons*, 30 Vt., 711; *Huffman* v. *Herburt*, 13 Wend., 875; *Meyer* v. *First National Bank*, 78 Ill., 257.) The plaintiff is a national bank and had no authority to take the pledges or warehouse receipts as security for loans of money. (*First National Bank of Charlotte* v. *First National Bank of Baltimore*, 2 Otto, 122; *Tolmax* v. *Pell*, 3 Seld., 328; *First National Bank of Lyons* v. *Ocean National Bank*, 60 N. Y., 278; *Scott* v. *National Bank of Chester*, 72 Penn. St., 471; *Loyd* v. *West Branch Bank*, 15 Id., 172; *Utica Ins. Co.* v. *Scott*, 19 Johns., 1; *Life & Fire Ins. Co. &c.* v. *Mechanics' Fire Ins. Co.*, 7 Wend., 31; *St. Louis* v. *Russell*, 9 Mo., 507; *Blair* v. *Perpetual Ins. Co.*, 10 Id., 559; *Venango National Bank* v. *Taylor*, 56 Penn. St., 15; *Bank of the United States* v. *Dandridge*, 12 Wheat., 64; *Head* v. *Providence Ins. Co.*, 2 Cranch, 127; *New York Firemen's Ins Co.* v. *Ely*, 2 Cow., 678–699; *Mutual Benefit Life Ins. Co.* v. *Davis*, 12 N. Y., 574.) The court, upon the trial, excluded any evidence upon the subject of usury, and refused to allow the defendant anything by reason of such usurious interest. This was error. (*National Bank* v. *Lewis*, 75 N. Y., 516, 524; *Meech* v. *Stoner*, 19 Id., 26; *Henderson* v. *Beers*, 6 Bosw., 639; *McDougall* v. *Walling*, 48 Barb., 369; *Lucas* v. *Government National Bank of Pottsville*, 78 Penn. St., 228; *Thomas* v. *Shoemaker*, 6 W. & S., 179; *Pickett* v. *Merchants' National Bank*, 32 Ark., 346; *Odway* v. *Central National Bank of Baltimore*, 47 Md., 217.)

*Spencer Clinton,* for the respondent.

SMITH, J.:

In 1874, one Frank Weppner, who was engaged in business in Buffalo as a pork-packer, and who had been a customer of the plaintiff, applied to the plaintiff to extend his line of discount, and on October 30, in that year, he procured and delivered to the plaintiff, in the presence of the defendant, a written instrument executed by the defendant, upon which this suit is brought, and of which the following is a copy :

"BUFFALO, October 30, 1874.

"*Whereas,* Frank Weppner is engaged in business in the city of Buffalo, as pork-packer and dealer in meats, and is desirous of increasing his facilities for obtaining money at the Farmers' and Mechanics' National Bank of Buffalo, and for that purpose proposes to pledge the property that may from time to time be in his possession to said bank, as security for discounts, loans and advances that may be made to him by said bank in the course of his business.

"Now, in consideration of the premises, and of one dollar to me, the undersigned, in hand paid, I do hereby promise and guarantee to said bank all such pledges of property, warehouse receipts and other vouchers that may from time to time be given by said Frank Weppner as collateral security to said bank for advances, discounts and loans of moneys, and promise on my part that the property so transferred and set over to said bank shall not be misapplied or diverted to any other purpose while such loans or advances remain unpaid to said bank, and if any default or misappropriations of the property so pledged shall be made, I do promise and agree to make good to said bank any deficiency and fully satisfy the stipulations contained in any such receipts or other vouchers therefor, without requiring any notice to me of the several loans and discounts that may be made by said bank to said Weppner.

(Signed)                              "GERHARDT LANG." [L. S.]

Between the time of the execution and delivery of the guaranty and January 30, 1877, when Weppner failed, he procured his notes to be discounted by the plaintiff, and he attached to each note a

warehouse receipt signed by him, as collateral security for the payment of the note. Each receipt stated that the property therein described was received in store from Weppner as owner, at his own premises, and was set apart and to be held subject to the order of the plaintiff. By a separate writing underneath each receipt, Weppner certified that the property therein described had been paid for, and was unincumbered, and he thereby transferred the title to the same to the said bank. All the notes proved were renewal notes except one. The total amount of notes held by the plaintiff at the time of the trial was $35,865, and the value of the property described in the warehouse receipts attached to the notes was $32,950. The plaintiff proved a demand of Weppner, and his refusal to deliver the property described in the several receipts, and a subsequent demand of the defendant to make good the deficiency.

The court ordered a verdict in favor of the plaintiff for the value of the property above mentioned, less the sum of $10,923.64, the proceeds of a sale of a portion of said property, which had been received by the plaintiff.

The principal questions in the case relate to the interpretation of the defendant's guaranty. It is argued in his behalf, that the only liability incurred by him was to make good any deficiency caused by a misapplication or diversion, on the part of Weppner, of the property pledged to the bank. We do not so understand it. He guaranteed also the pledges and receipts themselves; that is to say, he undertook that Weppner actually had in his possession the property which he professed to pledge, as well as that he would not misapply or divert it. That being the tenor of his agreement, many of the exceptions taken in his behalf at the trial fall to the ground. Thus, there was no error in rejecting the defendant's offers to prove that, in fact, the property described in the warehouse receipts was not in existence when the receipts were given; that the defendant was ignorant that the plaintiff was taking receipts on property not in the warehouse, or that was not set aside; that the defendant knew nothing of the dealings between the plaintiff and Weppner; that all the property described in the receipts was worth a much less sum than the receipts called for, and that, with the consent of the plaintiff, the property described in the receipts was

not separated from Weppner's other property in the warehouse. The defendant having guaranteed the pledges themselves, the offers referred to were wholly immaterial. For the same reason the requests to charge that the guaranty did not extend to the receipts, and that the defendant can only be made liable for a misapplication or diversion of pledged property actually in the warehouse, were properly denied.

The defendant insists that the plaintiff, by renewing Weppner's notes from time to time, and thereby extending the time of payment of his debt, without the knowledge or consent of the defendant, released the latter from his liability on the guaranty. The claim is not well founded. The defendant was not holden for the payment of the notes or of the debt evidenced by them. His guaranty related merely to the collateral pledges of property, without regard to the time of payment, or the term of credit of the indebtedness which the pledges were intended to secure.

It appeared that in several instances when a note was renewed, the receipt that had been attached to it was attached to the note given in renewal, with the consent of Weppner. Such renewal did not operate as a payment of the debt which discharged the collateral receipt and released the property, and the defendant's request to charge that such was its effect, was properly refused. The receipt continued in full force, the debt represented by the renewal note being the same as that which the receipt was originally given to secure.

Evidence was offered by the defendant to show what disposition he made of the property which Weppner assigned to him soon after the failure of Weppner. The evidence was properly excluded on the ground that it was immaterial. There was no claim against the defendant by reason of his having received that property, and no ground on which he could be made liable therefor in the action, and the recovery against him is not based upon the fact of his receipt of the property. True, the plaintiff had proved the assignment and conveyance made to the defendant by Weppner, but they were wholly immaterial, and, although the proof was received against the defendant's objection, it did not harm him, and for

that reason its reception was not error, for which the judgment should be reversed.

The defendant's offer to show that $11,000 of the property assigned to him by Weppner had come to the plaintiff, was made manifestly for the purpose of showing that he had not used it for his own purposes. This is apparent from the fact that by the same offer it was proposed to show that the rest of the property had been paid to the creditors or was held by defendant as a trustee, for their benefit. But even assuming that the first branch of the offer was made for the purpose of lessening the amount of the plaintiff's recovery, the entire offer was properly excluded, as the latter part of it, above referred to, was immaterial and irrelevant. Aside from that consideration, its exclusion did not harm the defendant, as the plaintiff had previously shown that he had received as the net proceeds of the assigned property, $10,923.64, which is doubtless the precise sum intended by the offer, and which, with interest to the time of the trial, was allowed to the defendant in making up the verdict.

The offer to prove certain representations alleged to have been made by the plaintiff's cashier to the defendant, at the time when he signed the guaranty, as to the nature of the liability which he incurred thereby, was properly excluded. Strictly, the offer was to show nothing more than an opinion expressed by the cashier, in good faith for aught that appears, upon a question of law. But if the purpose of the offer was to show a fraudulent misrepresentation, made with intent to deceive, there was no such matter set up in the answer.

For the purpose of establishing the defense of usury, the defendant offered to show that each of the notes in suit was discounted by the plaintiff at the rate of 16 per cent. per annum, which the plaintiff received at the times of the several discounts. The testimony was excluded as incompetent and immaterial under the pleadings. The answer setting up usury alleged that the notes were discounted at the rate of 10 to 14 per cent. There is authority for saying that the variance was fatal. (*Griggs* v. *Howe*, 31 Barb., 100; *S. C.*, affirmed, 2 Abb. Ct. App. Dec., 291.) The admission in the reply relied on by the defendant, is not enough for his purpose.

It does not admit that the claim, if any, arising upon the facts therein stated, had been assigned to the defendant. The claim is for the penalty of double the interest paid, given by section 5198 of the United States Revised Statutes, which prescribes that the party by whom the excessive interest has been paid, or his legal representatives, " may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid," &c. The section is a transcript of a part of section 30 of chapter 106 of the Laws of Congress, passed at the first session of the XXXVIII. Congress, in June, 1864. Under the section last cited, it was held by the United States Supreme Court that the penalty prescribed thereby in cases where illegal interest has been *paid*, cannot be set up as a counter-claim in an action upon the instrument or evidence of debt; the only redress the party making such payment has, is by a penal action, brought specially for that purpose. (*Barnet* v. *Muncie National Bank*, 8 N. Y. W. Dig., 378.)

The testimony was properly excluded.

Some other exceptions were taken, which require no special remark. They are without merit.

The judgment should be affirmed.

Talcott, P. J., and Hardin, J., concurred.

Judgment of Superior Court of Buffalo affirmed.