DEXTER L. SHELDON *vs.* FANNY M. RAVERET, impleaded, &c.

The proper charges and expenses of converting a security into money, are first to be deducted from the gross proceeds; and it is the balance, only, which is applicable to the discharge of the debts.

This is especially so, when the creditor is also the factor of the goods; he having a lien for all those .charges, which cannot be divested without his consent. The factor is accountable only for the balance, after deducting his charges and expenses.

APPEAL by the plaintiff from a judgment entered upon the report of a referee, directing a reconveyance to the respondent, and dismissing the complaint as to her, with costs.

The action was brought originally against this respondent, and Francis Raveret, her husband. Mr. Raveret subsequently died, and by order of this court the action was continued against Mrs. Raveret, individually, and as executrix of Francis Raveret, deceased.

The complaint was filed against Mr. Raveret as principal, and Mrs. Raveret as his surety, demanding an accounting between the plaintiff and said Francis Raveret, and that the sum found due to the plaintiff be collected out of certain real estate belonging to Mrs. Raveret, and which was conveyed to the plaintiff by her, and her husband, by deed absolute on its face, but in fact given as collateral security for moneys to be advanced to her husband by the plaintiff. The defendants appeared, and interposed separate answers. Mrs. Raveret, in her answer, alleges that the premises described in the deed was her separate property, and that the deed mentioned in the complaint was executed and delivered by her to the plain-tiff solely as collateral security for such advances as might be made by said plaintiff for her said husband, during the period of one year next after the delivery of said deed, as the plaintiff well knew; and that said deed was not subject to all the conditions and covenants contained in the contract of May 10, 1860, &c. Other defenses are also interposed.

The cause was afterwards referred to Hon. John Slosson, as sole referee, to hear and determine the same. · After hearing the proofs and allegations of the parties, the referee decided that the plaintiff was entitled to judgment against the estate of Francis Raveret, deceased, in the sum of $1870.67, with costs, to be levied out of said estate, and that Mrs. Raveret, personally, was entitled to judgment against the plaintiff for a reconveyance of said real estate, and that the complaint be dismissed as to her, with costs. By a supplemental report, the referee adjudged the plaintiff entitled to a quantity of tools, the value of which was to be applied in reduction of the amount found due to the plaintiff in the former report ; and judgment was entered accordingly.

From the judgment in favor of Mrs. Raveret, individually, the plaintiff brought this appeal.

The following are the leading facts pertinent to the issue between the parties to this appeal : On the 10th of May, 1860, Francis Raveret, now deceased, entered into an agreement in writing, of that date, with Dexter L. Sheldon, the plaintiff, whereby the former transferred to the latter very considerable personal property, consisting of stock, tools, brushes manufactured and in process of being manufactured, and agreed to deliver to Sheldon all the brushes he should manufacture during the term of one year from the execution of the contract. Sheldon agreed to advance money to Raveret, and to receive and sell the brushes, for which he was to have a commission of ten per cent on such sales. It was further provided, that within ten days, Raveret should cause to be executed and delivered to Sheldon " a good and sufficient deed, or conveyance, signed by himself and wife, of the premises now owned by said party of the first part, (Raveret,) or his wife, in the village of Lansingburgh, which conveyance and premises shall be held by said party of the second part, (Sheldon,) as collateral security for the repayment of the advances so made, and to be made as aforesaid by said party of the second part to the said party of the first part, and for

Sheldon *v.* Raveret.

the full and faithful performance of the covenants herein contained, to be kept and performed by said party of the first part, and that upon the full performance whereof said prem-ises shall be reconveyed by said party of the second part."

At the time of the execution of this agreement, Mrs. Rav-eret was, and for more than four years had been, the legal owner of the real estate mentioned in said agreement; and the deed thereof to her was recorded in Rensselaer county, June 9, 1856, of which the plaintiff had notice when that agree-ment was entered into. And the referee so found.

After the execution of this agreement, and previous to the giving of the deed by Mrs. Raveret, hereinafter mentioned, the plaintiff made advances to Francis Raveret, in money and merchandise, to the amount of $603.84. On the 21st day of May, 1860, the plaintiff, having the deed in question prepared, came to the residence of the respondent, in the village of Lansingburgh; and she was then and there requested by her husband, in the presence and hearing of the plaintiff, to execute the deed as collateral security for advances to be made by Sheldon to her husband for one year from that date, The plaintiff made no objection to the terms and conditions stated by Raveret to his wife. She thereupon consented to execute the deed on that condition, and did so; but she had never heard of the previous arrangement between Sheldon and her husband, as the proof showed, and as the referee found.

Mrs. Raveret, in executing the deed, acted as surety merely for her husband, and the plaintiff accepted it with full knowl-edge of the purpose for which it was given; and such is the finding of the referee.

During the year next after the execution and delivery of the deed, Mr. Raveret received from the plaintiff, by way of advances and in payment for brushes belonging to him, and disposed of under the contract of May 10, 1860, money and merchandise, which, with the interest thereon, amounted to $11,895.83; but it does not appear what proportion of it was for advances proper, nor how much thereof was payment on

account of brushes sold by the plaintiff under said contract. About $900 of such advances or payments were applied by Francis Raveret in the settlement and satisfaction of a judgment and mortgage lien on the premises, given as security for his own personal debt.

. On the 10th of May, 1861, one year from the commencement of the business, the plaintiff held, as security for his advances under said contract, brushes belonging to the principal debtor, Francis Raveret, of the value of $7000, and upwards. And besides this, the principal debtor, as late as July 11, 1861, had possession of personal property of the value of $1800, the title to which was, by the terms of the contract of May 10, 1860, vested in the plaintiff as security for his said advances. Of these facts, however, Mrs. Raveret had no knowledge or notice ; she did not even know of the existence of the original agreement between her husband and the plaintiff until after this action had been brought. The only advances made by the plaintiff to Raveret, after May 10, 1861, were $101.24, and those were made previous to August 15, 1861. On that day a second agreement was entered into between Francis Raveret and the plaintiff, as follows :

" This will certify, that whereas an agreement was made and entered into between Francis Raveret, of Lansingburgh, in the state of New York, and Dexter L. Sheldon, of the city of New York, on the 10th day of May, 1860, by which a lot of brushes were to be, and were, manufactured, many of which are now on hand, unsold ; and whereas said Raveret is desirous and anxious that said brushes shall not be forced upon the market, and sold in these depressed times, at prices greatly reduced, and ruinous not only to the present sales but to his future business, having been offered only fifty per cent upon the worth, and that on 12, 18 and 24 months. Now, therefore, in consideration of the above, I, the said Francis Raveret, hereby promise and agree to and with the said Dexter L. Sheldon, to pay or allow to him a sum equal to five per cent on all said brushes now on hand, unsold, to hold

Sheldon *v.* Raveret.

them from the tenth of May last, until the 1st of September next; and for all those remaining on hand, unsold, on the said 1st of September, a further sum, equal to four per cent, to hold them until the 1st of January next; and for all those remaining on hand, unsold, if any, on the said 1st of January, a further and additional sum equal to three per cent more, to hold them until the 1st of May next. And upon all sales of said brushes, by whomsoever made, prior to said first of September, said Sheldon to be allowed or paid a sum equal to seven and a half per cent, and upon all sales made from said 1st of September to said 1st of January, he is to be allowed or paid a sum equal to six and a quarter per cent, and upon all sales from said 1st day of January to said 1st of May, he is to be allowed and paid a sum equal to five per cent; and said Sheldon is to make no further charge for holding, storing and insuring said brushes during said time; all sales to be made on approval of said Sheldon, and at risk of said Raveret. This to be canceled at any time after the claims of said Sheldon against said Raveret are paid." This was signed by said Raveret only.

The defendant insisted that the legal effect of this agreement was to extend the time of payment, create a new obligation against the principal, in favor of the creditor, and therefore to discharge the surety. The commissions, as claimed by the plaintiff under the first agreement with Francis Raveret, amounted to $690.79. The aggregate amount of advances and payments made by the plaintiff after the deed was given was only $12,600.91, which included interest on the same, and interest on the $608.84, previously advanced, and also interest on the entire commissions claimed. Add to the above amount all the commissions claimed under the first contract, as before shown, and the sum total is $13,291.70. It was proved, and also found by the referee, that the whole a amount realized by the plaintiff for sales of brushes down to the time of the trial, was $13,426.18.

In his account against the principal, the plaintiff charged,

and was allowed by the referee, the sum of $572.33, for interest on commissions, down to the date of the referee's report.

*E. R. Bogardus*, for the appellant. I. The referee erred in finding as matter of fact that Mrs. Raveret had no knowledge of the existence of contract A, nor of its terms or contents. The referee discredits the defendant's evidence in every other particular than this.

II. That the referee erred in finding as matter of fact, " That in executing and giving the deed, Mrs. Raveret acted simply as a surety for her husband, by the pledge of her property, for the repayment of advances to be made to him by the plaintiff, for the period of one year ; and the plaintiff in accepting the deed accepted it with knowledge that she was pledging her property as surety only for the purpose aforesaid.

III. The property is liable to the appellant for his advances to remove liens thereon. (*a.*) The defendant, Francis Raveret, became indebted to the appellant for advances during the year 1860 and 1861, (exclusive of payments thereon,) in an amount exceeding $1000, and $905 of this sum was for advances to remove liens against the property described in schedule B. (*b.*) This suit asks equitable as well as legal relief, and it is not equity that real estate shall be relieved from that part of a legal debt against one defendant, which is equitably a charge upon the property of the other defendant. (*c.*) The advances to relieve liens on the real estate were with the knowledge and at the request of Mrs. Raveret. (*d.*) Even admitting that as against Mrs. Raveret, the appellant cannot deduct his commissions on sales of goods delivered to him by her husband, on which to realise money to repay advances, still she cannot claim the benefit of moneys belonging to the appellant to discharge liens on her property. (*e.*) At the expiration of the year, after execution and delivery of the deed, Mr. Raveret had not paid the appellant his advances, to say nothing about commissions ; the advances exceeded payments by $7000 at that time.

Sheldon *v.* Raveret.

IV. The finding of the referee that the security was "for repayment of advances to be made to her husband by the appellant for the period of one year," will not avail Mrs. Raveret. (*a.*) It is unquestionably the fact that such advances were not repaid within one year, nor were they at all, unless the appellant appropriated his own commissions (or earnings) to such repayment. (*b.*) Does the finding of the referee mean that the advances were to be made in one year, or that the advances were to be repaid in that time? If the former, then there can be no question about the appellant's rights, for then she pledged her property as surety, the same as the contract provided. If the latter, then as the advances were not repaid within the year, her property became liable to the indebtedness accrued at that time, and any arrangement made between her husband and the appellant for the payment thereof, she is bound by, excepting so far as they may have delayed the time of payment so as to prevent the surety from obtaining her rights. (*c.*) The factor has a right to appropriate moneys coming into his hands to such of the liabilities of his debtor as he chooses, unless otherwise agreed. (*d.*) The appellant (his debtor neglecting) made application of moneys to his debt for commissions before advances.

V. The referee erred in his ninth conclusian of fact, "that the whole amount realized by the plaintiff from sales of brushes, effected by him under said contract, down to the trial of this action, was $13,426.18," and also in his first conclusion of law, "that the plaintiff having been overpaid such advances and interest, the said property is discharged and Mrs. Raveret is entitled to a reconveyance of the property." (*a.*) The evidence refutes both of these conclusions. (*b.*) The factor has a lien on the moneys realized from sales of his principal's goods, and cannot be compelled to pay it to his principal. (*c.*) So much of the moneys realized from the sales of the brushes as the appellant was entitled to retain

for his expenses and services in selling, was his property, and not that of Mr. Raveret, and Mrs. Raveret has no right to compel him to apply it for her benefit, any more than Mr. Raveret could do so. (*d.*) Mr. Sheldon stood in the same relation to Mr. and Mrs. Raveret, so far as the selling of the brushes was concerned, (even under the 6th finding of fact,) as any outside factor who had the right to retain his commissions before applying the proceeds of his sales to the discharge of Mr. Sheldon's advances to Mr. Raveret.

*R. A. Parmenter*, for the respondent. I. It is alleged in the complaint, established by the evidence, and found by the referee, that the deed from Mrs. Raveret, although absolute on its face, was nevertheless given as collateral security for the payment of the debt of her husband.

II. The deed was executed, acknowledged, and delivered to the plaintiff in person, on the 21st day of May, 1860. At that time Mrs. Raveret was utterly ignorant of the agreement then existing between her husband and the plaintiff. She was asked in the presence and hearing of the plaintiff, to execute the deed as surety of her husband for advances *to be thereafter* made to him by the plaintiff, during the period of one year. The plaintiff, as well as her husband, entirely neglected to inform her of the existence of the agreement already executed between the principal parties, and of the advances already made to her husband. The obligation of a surety being held in all cases to be *stricti juris*, it follows that the liability of Mrs. Raveret, under the deed, is limited to the precise purpose for which she was requested to become surety. In *Gates* v. *McKee*, (3 *Kern.* 237,) Denio, J. said "that the surety is not to be held beyond the very precise stipulations of his contract."

III. There is no legal or equitable foundation to support the claim of the plaintiff, that Mrs. Raveret is liable as surety for the payment of the $603.84, advanced by him to her husband *previous* to the execution of the deed. The

plaintiff should have asserted such claim when the collateral security was being given, and then the surety could have easily declined to incur the proposed responsibility. And the same considerations justify the rejection by the referee of the claim for commissions, under the agreement of May 10, 1860, of the existence of which the surety had no notice until this action was brought.

IV. It clearly appears that after the last advance had been made by the plaintiff, and the last shipment of brushes made by Francis Raveret, and previous to the second agreement of August 15, 1861, the plaintiff held the possession and legal title, by way of security, to property belonging to the principal debtor, exceeding in value his entire demands against Francis Raveret. And it is submitted that in respect to such property, the plaintiff was bound to convert such securities into money, and apply the same in extinguishment of his demand, or else surrender those securities to Mrs. Raveret, the surety, upon the payment by her of such demand. Nothing of that sort was attempted by the plaintiff; he did not even apprise the surety of the non-payment of the debt, to secure which her deed had been given. On the contrary, he sought the principal debtor and entered into new schemes and arrangements with him, manifestly against the interest of the surety. (*See* 1 *Story's Eq. Jur.* §§ 324, 325.)

V. It is also submitted that in legal effect the second agreement entered into between the plaintiff and Francis Raveret, on the 15th day of August, 1861, operated as an extension of the time of payment of the demands then due from Raveret to the plaintiff, until the following May. The language of the instrument is peculiar. It recites that " Raveret is desirous and anxious that said brushes shall not be *forced* upon the market and sold in these depressed times." Forced by whom? By Sheldon, not as agent, but as *creditor*, who held them by way of security for a debt already due. " Now; therefore, in consideration of the

above,"—that is, in consideration that Sheldon will forbear his demand, and not force the brushes upon a dull market and sell at ruinous prices—"I hereby promise," &c. And such extension having been given, as the referee finds upon adequate proof, without the knowledge or assent of Mrs. Raveret, it discharged her as such surety, and also the obligation created by her deed. The principle is well settled, that giving time to the principal debtor, though it be but a day, without authority from the surety, discharges the latter. And though the surety, as in the case at bar, is not personally bound, but has simply mortgaged her separate estate by way of security for the debt of her husband, her property is released by an agreement with her husband without her assent, extending the time of payment. Nor is the surety deprived of the benefit of this rule where such agreement is founded upon an usurious consideration.

Again. The second agreement superseded the one of May 10, 1860, and not only enlarged the time·of performance, but *varied* materially the terms of the obligation created by the first agreement, and that having been done without the assent of the surety, she is discharged. These propositions are supported by undoubted authority. (*Rathbone* v. *Warren,* 10 *John.* 587. *Reynolds* v. *Ward,* 5 *Wend.* 501. *Gahn* v. *Neimcewicz,* 11 *id.* 312. *Miller* v. *McCan,* 7 *Paige,* 451. *La Farge* v. *Herter,* 5 *Seld.* 241. *Smith* v. *Townsend,* 25 *N. Y. Rep.* 479. *Billington* v. *Wagoner,* 33 *id.* 31. *Pitts* v. *Congdon,* 2 *Comst.* 352. *Coleman* v. *Wade,* 2 *Seld.* 44. *Fellows* v. *Prentiss,* 3 *Denio,* 512. *Bangs* v. *Strong,* 7 *Hill,* 252 ; *affirmed in* 4 *Comst.* 315.)

It is further submitted that after this second agreement took effect, the plaintiff could not have maintained an action against Francis Raveret for an accounting, previous to the 1st day of May, 1862. And, if that be so, the plaintiff, during that period, on being fully paid by the surety, could not have given the latter an *immediate* right of action against the principal debtor, nor could he, without violating the

spirit of the contract, have surrendered to the surety the securities he held belonging to the principal. The letter of May 21, 1861, from Sheldon to Raveret, indicates the nature of the new arrangement as contemplated by the creditor.

VI. If it shall be again urged that the second agreement did not extend the time of payment, and was obligatory only on Francis Raveret, who executed it, we answer that *such* is not the true construction of the paper; but if it were, the contract would be void for want of mutuality, and the plaintiff would have no tenable ground for claiming, as he does, $1307.37, for commissions under it.

VII. In any view of the case, this second agreement is void as between the creditor and surety of Francis Raveret. When it was made the entire property was held by Sheldon as security for advances previously made to the principal debtor. Mrs. Raveret, as such surety, had an equitable lien on or interest in whatever securities the creditor held belonging to the principal debtor. And the creditor had no right at law, or in equity, to deal with such securities to the prejudice of the surety. Nor could he have surrendered the brushes, or any part of them, to Mr. Raveret, and afterwards enforced his demand against the surety. And for the same reason Sheldon had no authority to make a private arrangement with his debtor creating a new lien, charge, or commission upon those bushes, or the proceeds thereof, to the amount of $1307.37, or any other amount. She had the right to be subrogated, on payment of the debt, to the securities held by the creditor. (*Matthews* v. *Aikin,* 1 *Comst.* 595.) The paramount rights of the surety intervened. The actual expenses attending the sale of the brushes have been charged in the general account, as advances, and independently of the instrument, there is no proof as to the value of the services and storage, for which the charge of $1307.37 was made. Nor is this position overthrown by the illusory theory advanced by the plaintiff, that the moneys sought to be retained by him as commissions, being a primary

charge upon the fund, never equitably belonged to the principal debtor. But the answer to that is, that without the assent of the surety the creditor and debtor had no legal right to create any new lien upon these brushes, or the proceeds thereof.

VIII. It is not pretended, on behalf of the plaintiff, that any specific appropriation has been made by him, of the moneys realized from the sale of brushes. It was an open account down to the time of the trial. And it remains for the law to make the appropriation according to the justice of the case. That is the rule, at law and in equity. (*Allen v. Culver,* 3 *Denio,* 290.)

IX. It appears from the undisputed evidence that the plaintiff has been reimbursed for the entire advances made by him, and for all the commissions claimed by him under the first contract, and over one half of his claim under the second agreement. The aggregate amount of such advances, including *interest* charged on commissions under both contracts, is $12,600.91. The interest so charged on the commissions claimed, and improperly allowed, even against the principal debtor, is $572.33. Strike out this last item, and it leaves the sum of $12,028.58, which embraces all the advances so made, with interest thereon. Now, as the referee truly finds, the plaintiff has realized in cash from sales of brushes, held as security, the sum of $13,426.18. And that leaves in his hands, to be applied on his commission account, $1397.60. (2 *Wend.* 413. 5 *Cowen,* 587. 2 *Caines,* 226. 4 *Cowen,* 496.)

X. Upon every question of fact decided by the referee, adversely to the plaintiff, there was conflicting evidence, and his findings in that respect will not, therefore, be disturbed by the appellate court. This rule is too familiar to require the citation of authority in its support.

XI. The plaintiff's exceptions to the referee's omission to find additional facts and conclusions of law, should not be entertained by this court, upon this appeal. The remedy of

Sheldon *v.* Raveret.

the plaintiff would be by a motion to compel the referee to pass specifically upon the findings proposed. But it does not appear from the case that the referee was ever requested to pass upon such questions. (*Heroy* v. *Kerr*, 21 *How. Pr.* 409, 422.)

XII. The judgment of the referee, discharging the surety, and ordering a reconveyance of the premises, is manifestly right, and being so, it should not be disturbed, even though his reasons for it should not receive the unqualified approval of the court of review. But it is submitted that the findings of fact and conclusions of law found against the plaintiff, are correct.

CLERKE, J. If I understand this case correctly, the only question involved in it is, whether the plaintiff had a right to appropriate the proceeds of sales which he made as factor, first for the payment of his commissions, before any of the proceeds could be accredited to the payment of advances made to the husband, the principal debtor, to secure which, one of the defendants, the wife, mortgaged her real estate.

The property was sold by the plaintiff as factor for the husband, and consisted of brushes ; and at the expiration of the time fixed for the continuance of the agency and advances, they were sold ; and they failed to realize a sufficient sum to satisfy the advances ; leaving a deficiency of $1870.67. The referee found, however, that as this balance in favor of the plaintiff was caused by deducting commissions on the sales, the mortgaged property was not liable for this balance, and directed that it should be reconveyed to Mrs. Raveret ; it having been conveyed to the plaintiff by a deed absolute on its face, although, as we have seen, given as collateral security for money to be advanced to her husband by the plaintiff.

In my opinion the referee was clearly in error. The plaintiff having stood in the two relations of pledgee and factor to the principal debtor before any of the proceeds could be made available for the satisfaction of the advances, the commis-

sions must be first deducted. These commissions include charges not only for selling the goods, but for holding, storing and insuring. These are indispensable preliminary expenses, before a fund can be realized out of the goods, for the payment of the advances. It is scarcely necessary to urge that the proper charges and expenses of converting a security into money are first to be deducted from the gross proceeds, and that it is the balance, only, which is applicable to the discharge of the debt.

This is especially so, when the creditor is also the factor of the goods ; for he has a lien for all these charges, which cannot be divested without his consent. The factor is accountable only for the balance, after deducting his charges and expenses.

The judgment should be reversed, and a new trial ordered ; costs to abide the event.

LEONARD, J. The agreement of August 15, 1861, is not an extension of the time of payment. The plaintiff owed no obligation to Mrs. Raveret, as surety for her husband, to sell the brushes. The plaintiff could, without interference with her rights, agree to hold the brushes. No defense is set up by Mrs. Raveret of an extension of the time of payment to her husband, or injury from delay in selling the brushes.

Brother CLERKE is clearly right on the question of the amount of the proceeds of sales applicable to the payment of the advances.

WELLES, J. also concurred.

New trial granted.

[NEW YORK GENERAL TERM, June 3, 1867. *Leonard, Clerke* and *Welles,* Justices.]