(89 App. Div. 465.)

### BANK OF STATEN ISLAND v. SILVIE.

(Supreme Court, Appellate Division, Second Department.   December 30, 1903.)

1. PLEDGES—RIGHTS OF PLEDGEE—EXPENSES OF COLLECTION.
    The pledgor of collateral is liable to the pledgee for the necessary ex-
    penses of its collection.
2. SAME—EXISTENCE OF RELATION—QUESTION FOR JURY.
    Whether a voucher in the possession of a bank was held as collateral to
    a note, or not, when raised by affirmation on one side and denial on the
    other, is for the jury.

Appeal from Municipal Court, Borough of Richmond, Second Dis-
trict.

Action by the Bank of Staten Island against Isaac A. Silvie.   From
a judgment for plaintiff, defendant appeals.   Reversed.

Argued before BARTLETT, JENKS, HIRSCHBERG, and
HOOKER, JJ.

Wm. Allaire Shortt, for appellant.
Thomas G. Prioleau, for respondent.

HOOKER, J.   On January 3, 1898, the defendant discounted at
the plaintiff bank a voucher or draft upon the treasurer of Richmond

¶ 1. See Pledges, vol. 40, Cent. Dig. § 68.

county, bearing date the 31st of December, 1897, for $3,370.35, which had been given him in part payment for services and expenses as one of the coroners of that county prior to the consolidation. The plaintiff deducted legal interest for four months, amounting to 2 per cent. of the face of the draft, and credited his account with the avails. It seems to have been conceded at the trial by both parties that this voucher, signed by order of the board of supervisors by its chairman and clerk, was a nonnegotiable instrument. It required the county treasurer to pay its face out of any money in his hands for contingencies. After consolidation, and in the spring of 1898, the city refused to pay the voucher on the ground that Silvie had been guilty of fraud in procuring it. The cashier of the plaintiff, later, and before any steps had been taken to enforce its payment, sent for the defendant, who called at the bank, and the situation was explained to him. The defendant urged that the voucher was all right, and should be paid by the city. The cashier testifies that the defendant made several attempts to procure influence in effecting the payment of the voucher, but without avail, and that in July, 1898, he told the defendant that the bank could not hold the voucher any longer, and that he would have to give his own note for the amount due, and then they could see what could be done with the voucher; that the defendant was agreeable, and handed him his demand note for the amount of the voucher. Later the cashier testified that he told the defendant at the same conversation that he would have to give the note, and that the bank would keep the voucher as collateral, and see what could be collected on it. The defendant's version of the conversation when the note was given is that the cashier told him the voucher was "no good," and was not worth the paper it was written on; that it was a forgery, and defendant was liable to be sent to State Prison; that there was just one thing to do, and that was to give his note for the amount of the voucher. To this the defendant replied that, if he said the voucher was "no good," it was no more than right that he should give his note, which he did, stoutly maintaining that the voucher was good, "and that is all there is to it." The defendant says that nothing was said about collateral, and denies that any agreement was made by which the voucher was to be held as collateral to the note. The affair remained in statu quo until the month of May, 1899, when the plaintiff, through its attorneys, and without having requested the defendant to prosecute it, sued the city of New York upon the voucher. The trial of that suit resulted in a judgment for the bank, from which the city appealed to this court. Here the judgment was affirmed, and the case is reported in 68 App. Div. 231, 74 N. Y. Supp. 284. The city again appealed to the Court of Appeals, and in May, 1903, four years after the action was brought, that court affirmed the decision of this court. 174 N. Y. 519, 66 N. E. 1104. The city then paid the face of the voucher, interest from April 14, 1898, to the date of payment, and the costs and disbursements in all the courts in full. These sums, together with a small balance in plaintiff bank to the credit of defendant's account, were then credited upon defendant's demand note, less the sum of $500 paid by plaintiff to its attorneys as compensation, additional to their taxable costs, for their services in the suit against the city; and

for the balance alleged to be due upon the note, with interest, after the deduction of those sums, this action was brought. The trial was before the Municipal Court and a jury, and resulted in a judgment for the full amount claimed, from which the defendant appeals.

At the close of the evidence, over the defendant's objection, the court held, as matter of law, that the respondent was the pledgee in possession of the voucher, and was entitled to prosecute the collateral by suit, and to charge a reasonable fee for its collection. The only question presented for the jury's consideration was as to the reasonableness of the fee of $500 paid by the respondent to its attorneys. The appellant specially requested to go to the jury on the question as to whether the agreement was that the voucher was to be collateral to the note, but the court refused. Had it been properly established as a fact in the case that the voucher was pledged, the rule adopted at the trial would have been correct, for the pledgor of collateral is liable to the pledgee for the necessary expenses of collection. Field v. Sibley, 74 App. Div. 81, 77 N. Y. Supp. 252, affirmed in 174 N. Y. 514, 66 N. E. 1108; Sheldon v. Raveret, 49 Barb. 203; Griggs v. Howe, 31 Barb. 100; Id., 2 Abb. Dec. 291; Willard v. White, 56 Hun, 581, 10 N. Y. Supp. 170. No extension to this rule is claimed to exist in respect of paper not held as collateral. The appellant's contention, supported by his evidence, upon the trial and upon this appeal, is that there was no pledge. We are of the opinion that the trial court erred in taking from the jury this question of fact, and assuming its determination. While the court, sitting with a jury, is called upon to determine some questions of fact, such as the competency of witnesses, and others, it has never been held that the relations between parties is in this category. What the actual contract was, existing between the parties here, was an issue of fact, squarely raised by the proof; and it was within the province of the jury to pass upon this issue, as well as the others in the case. The error was vital, and calls for a reversal.

The judgment should be reversed, and a new trial ordered; costs to abide the event. All concur.