JOHN S. DAVENPORT, as Receiver of THE BANK OF STATEN ISLAND, Appellant, *v.* NATIONAL BANK OF COMMERCE IN NEW YORK, Respondent.

Second Department, June 18, 1908.

**Banking — Clearing House rules — payment by Clearing House agent of checks drawn on insolvent bank after the Superintendent of Banks had taken possession — right to reimbursement.**

The Bank of Staten Island on December 31, 1903, was insolvent, and the Superintendent of Banks took possession. The following business day the defendant, which was its clearing agent and a member of the Clearing House Association, in good faith paid checks drawn on the Bank of Staten Island, and subsequently sold or collected enough of the bills receivable in its hands belonging to the said bank to reimburse itself. The defendant was bound by the constitution and rules of the Clearing House Association to pay all checks of any bank for which it cleared until after the exchanges of the morning following a notice that it would not longer clear for such bank. The Bank of Staten Island had assented to and agreed to be bound by and comply with the rules and regulations of the Clearing House Association. There was an agreement between the Bank of Staten Island and the defendant whereby defend-

ant held for its protection certain bills receivable belonging to the bank, which contract was entered into under such circumstances as to make the constitution and rules of the Clearing House Association a part of the contract, and the association a party thereto.

*Held*, that this agreement required the defendant to pay all checks drawn upon the Bank of Staten Island when presented through the Clearing House until the completion of the exchanges the morning following the giving of a notice that it would no longer clear, and authorized the defendant to sell and collect the bills receivable when necessary to pay the checks redeemed by it, although as a result some depositors of the insolvent bank secured a preference by presenting checks on the morning after the Superintendent of Banks had taken charge;

That the bills receivable deposited with defendant by the Bank of Staten Island were in effect collateral in its hands to secure the payment of all checks drawn upon said bank, which the defendant would be obliged to redeem under the Clearing House rules;

That it is immaterial that the effect of the contract was to continue redemption for twenty-four hours after the Superintendent of Banks had taken possession and to allow some depositors to obtain a preference, since this was not the purpose of the contract but an incident to it;

That the defendant bank was not called upon to withdraw from the Clearing House Association, although thereby it might have avoided redemption of the checks, since such a withdrawal would have resulted in injury to it;

That reasonable charges for counsel fees in collecting the bills receivable should be allowed defendant, and also protest fees incurred in protesting the redeemed checks where such protest was made at the request of the Superintendent of Banks.

APPEAL by the plaintiff, John S. Davenport, as receiver, etc., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Richmond on the 2d day of February, 1907, upon the report of a referee dismissing the complaint upon the merits, and also from an order entered in said clerk's office on the 2d day of February, 1907, granting the defendant an extra allowance.

*John S. Davenport*, appellant, in person.

*John Quinn*, for the respondent.

Judgment and order affirmed, with costs, on the opinion of Hon. ALTON B. PARKER, referee.

WOODWARD, HOOKER, GAYNOR, RICH and MILLER, JJ., concurred.

The following is the opinion of the referee:

PARKER, Referee:

The Bank of Staten Island on the 31st day of December, 1903, was insolvent, and during the forenoon of that day it was taken possession of by the Superintendent of Banks. The business day following, the defendant, a member of the Clearing House Association, paid checks drawn upon the Bank of Staten Island amounting to something like $102,000. It had on hand a little over $11,000 of the money of the Bank of Staten Island, and held for its protection bills receivable belonging to that bank of the face value of something over $228,000. Subsequently it sold or collected enough of the bills receivable to reimburse itself, and the securities remaining, together with the surplus of moneys in its hands, amounting to something over $6,000, were turned over to the receiver of the Bank of Staten Island.

It is to recover the value of the securities thus converted into cash by the defendant, and the cash on hand which it retained for reimbursement on account of the checks drawn on the Bank of Staten Island, that this action is brought. There is no controversy as to the good faith of the defendant in all these transactions. There is no claim that any of its officers, in collusion with certain depositors, sought to benefit them at the expense of the other depositors of the Bank of Staten Island, or that in any way it acted otherwise than it deemed to be its right and duty under the contract which existed between it, the Bank of Staten Island, and the Clearing House Association.

Unfortunately, it did happen that certain depositors, having deposits aggregating about $70,000, were enabled, through the shrewdness of one who early obtained information of the insolvency of the bank, to secure their deposits — a result most inequitable, and, therefore, one to be deplored. The device adopted was a very simple one. Each depositor acting under the advice of the one who knew the situation, drew a check which was intended to cover about the amount of his deposit. These checks were deposited with the Stapleton National Bank on the day that the receiver took possession of the Bank of Staten Island, and the following business morning they were presented to the correspondent of the Stapleton National Bank, namely, the National Park Bank, which bank presented them at the Clearing House at its opening, where in due

course, according to the regular method of business, they were presented to and paid by this defendant. Other banks in precisely the same way and at the same time presented at the Clearing House checks which they had received drawn upon the Bank of Staten Island which, so far as the record discloses, were drawn by depositors in the usual course and without any knowledge of the fact that the bank was insolvent or that the Superintendent of Banks had taken possession.

The plaintiff contends that the defendant ought not to have paid any of the checks that were presented to it; that its officers had knowledge of the taking of possession by the Superintendent of Banks the day before. Hence, it paid with knowledge that thereby the drawers of the checks would obtain a preference over other depositors and that the preference so obtained would be upheld by the courts. (*O'Brien* v. *East River Bridge Co.*, 161 N. Y. 539.)

So far as the defendant was concerned, it had in fact no choice. It was a member of the Clearing House Association. As such, it had bound itself to pay all checks of the Bank of Staten Island, or any other non-member bank for which it cleared, until after the exchanges of the morning following a notice that it would not longer clear for such bank.

The constitution of the New York Clearing House Association, together with its rules and regulations, constitute an agreement between the fifty-four member banks which make up the association, by which all are bound. Section 25 of the constitution provides that "Whenever exchanges shall have been made at the Clearing House by previous arrangement between members of the association through one of their own number, and banks in the city and vicinity, who are not members, the receiving bank at the Clearing House shall in no case discontinue the arrangement without giving previous notice, which notice shall not take effect until the exchanges of the morning following the receipt of such notice shall have been completed." The Clearing House Association rules, following the command of the constitution, provide that any member of the association sending through the Clearing House the exchanges of any bank or banks not members "shall be liable in the premises, the same as for its own transactions, and its liability in all such cases shall continue until after the completion of the

exchanges of the morning next following the receipt of notice of discontinuance of any such agency." By an amendment to the Clearing House rules adopted May 23, 1866, it was provided "That the liabilities of banks in the Clearing House doing business for banks in the vicinity, are under the amendment to the constitution passed April 26th, 1865, the same as for their own transactions."

The defendant, as soon as it received the information on December 31, 1903, that the Superintendent of Banks had taken possession of the Bank of Staten Island, gave notice to the members of the association in the manner provided by its rules and regulations of the discontinuance of the arrangement of clearing for such bank. Such notice, however, could not take effect until the completion of the exchanges on the morning of the first business day following. There is no pretense that the defendant had any suspicion of the condition of the Bank of Staten Island prior to its being informed that the Superintendent of Banks had taken possession. It gave the notice, therefore, as soon as it possibly could, which was after learning that the bank it was representing was in trouble. And it had no more right in view of its engagements with its associate members in the Clearing House Association to refuse to pay checks presented in the Clearing House on the morning following the giving of the notice than it had to refuse to pay checks drawn upon it by its depositors. In paying the checks, therefore, it did only what it was bound to do and could be compelled to do. It did, however, seek to minimize the number of checks it would be obliged to redeem the following business day, by requesting members of the association not to accept checks drawn on the Bank of Staten Island. More it could not do.

But, it is said, if its engagements with its associate members in the Clearing House Association compelled it to pay the checks of the Bank of Staten Island, that was its misfortune; that its agreement with its comembers to pay such checks gave it no further or other right against the Bank of Staten Island than any other creditor had. That would of course be true were it not for the existence of a contract which it had with the bank, by the terms of which it held for its protection bills receivable of the value of twice the amount paid by it in redeeming the Bank of Staten Island checks — a contract entered into by both parties, not only with

knowledge of the constitution and rules of the Clearing House Association, but also under such circumstances as to make such constitution and rules a part of the contract, and the Clearing House Association a party thereto.

The Bank of Staten Island by the making of the agreement, becoming what is known as a non-member bank, was compelled to pay, as were the forty-five other non-member banks, a fee for the privilege of being cleared for by member banks. Non-member banks, as well as member banks, make weekly statements to the Clearing House. These statements are tabulated and printed and circulated among all the member and non-member banks, and show the condition of each bank, its obligations, its legal reserve, and its general financial condition.

While the Western National Bank was acting as the clearing agent of the Bank of Staten Island in April, 1899, the board of directors of the latter bank adopted the following preamble and resolution: "Whereas this corporation has acquired the privilege of clearing and making exchange of its checks through the New York Clearing House Association, and is subject to its rules and regulations, now, therefore, be it resolved, that this corporation hereby in all respects assents to and agrees to be bound by and to comply with all rules and regulations regarding collections outside of the city of New York, which may be established pursuant to the constitution of said association, and that the president of this corporation is hereby instructed to file a certified copy of this resolution with the Clearing House Association as evidence of such assent and agreement on the part of this corporation." As the rules and regulations of the association by which it thus agreed to be bound in effect make a member bank which assumes to clear for another bank a practical guarantor for twenty-four hours of the bank which is being cleared for, it is the custom of all member banks to require non-member banks for which they clear to keep a certain amount of money on deposit for the purpose of paying checks drawn against it, and also to keep on deposit bills receivable or other collateral in an amount agreed upon, sufficient to assure the member bank against either loss or delay. Such an agreement existed between this defendant and the Bank of Staten Island from October 3, 1903, down to and including all the occurrences which are the subject of this controversy.

It had similar agreements with other banks from April, 1890, down to the date of the agreement with this defendant.

The legal effect of those agreements, as well as the one under consideration, was to require the member bank clearing for said Bank of Staten Island to pay all the checks drawn upon the latter when presented through the Clearing House until the completion of the exchanges of the morning following the giving of a notice that it would no longer clear. On the other hand, the agreement in legal effect authorized the clearing bank to use the moneys deposited in pursuance of it to meet such checks, and in addition, to collect or sell the bills receivable or other collateral when necessary to pay the checks redeemed by it that were in excess of the amount of moneys on deposit.

The agreement now under consideration was entered into at a time when the bank was solvent, and when it deemed it of value to it that this defendant should clear for it. To secure that advantage it had the legal right to enter into the contract which it did make, a contract which authorized the defendant to make use of the bills receivable for its protection in the event that the Bank of Staten Island should fail to keep on deposit with the defendant sufficient moneys to pay any and all checks that under the rules of the association the defendant should be compelled to redeem. The defendant was compelled to redeem while that contract was in force checks amounting to about $102,000. Hence it had the right to use the cash on hand and the bills receivable to the extent necessary for its reimbursement. They were in legal effect collateral in its hands to secure the payment by the Bank of Staten Island of all the checks drawn upon it which the defendant should be obliged to redeem under the Clearing House rules. Its right to employ them, as collateral is usually used, to satisfy the obligation they were intended to secure seems to me unquestionable though it were not the fact that there existed an arrangement between these two banks and the Clearing House, which constituted a tripartite agreement upon ample consideration for the mutual benefit of all the parties to it. Such, however, was the legal effect of the arrangement into which these parties entered. And so the Court of Appeals held in *O'Brien* v. *Grant* (146 N. Y. 163), where similar relations and situations were carefully considered by that court.

Second Department, June, 1908.. [Vol. 127.

The learned counsel for the plaintiff insists that *O'.Brien*·v. *Grant* is not on all fours with this case, because in that one the superintendent had not taken possession. While there is that distinction between the two cases, the fact is that in that case the redeeming bank in the 'Clearing House Association not only knew that insolvency was suspected, but also knew that the bank had closed its doors. But, as I understand the opinion, the decision was not rested upon any such distinction. Instead, the court held that the suspected insolvency of the non-member bank did not excuse the member bank from the performance of its obligations to the Clearing House bank, and hence the agreement under which it undertook to clear for a non-member bank entitled it to hold and apply the securities which it held for its protection in payment of the amount so paid by it.

The opinion of the court seems to me to indicate very clearly that the decision would not have been different had the member bank in that case known that the non-member bank was insolvent instead of suspecting it. The reasoning of the opinion which led to a decision which sustained the right of the member bank to do precisely what the member bank did in this case is not rested at all upon the certainty or uncertainty of the member bank as to the insolvency of the non-member bank. Instead, it demonstrates that the agreement as made was not in violation of the State banking corporation law, or any other law; that it was such an agreement as the three parties to it were competent to make; that its terms were unambiguous and entitled the member bank to redeem the checks drawn upon the non-member bank on the first business day following the giving of the notice, and to employ the collateral which it held to satisfy its claim for moneys paid out in the redemption of such checks. If, however, I am giving to the decision a broader construction than it is entitled to, it nevertheless seems to me clear that there is no opportunity for a distinction between the two cases. In that case the non-member bank had closed its doors and the member bank knew it and suspected insolvency; in this case the superintendent took possession, and because of that fact the defendant's officers probably suspected insolvency. But they were not advised by the superintendent or by any one else prior to the redemption of the checks in question that the bank was insolvent.

In both cases, therefore, there was of necessity a suspicion of insolvency, and nothing more. From every point of view, therefore, the two cases are in all material respects similar.

The plaintiff urges specifically that the contract was in effect one to continue redemption for twenty-four hours after the Superintendent of Banks should take possession, and for that reason void. It must be conceded that such has been its effect, not only in this case, but also in the *O'Brien* v. *Grant* case. But that was not the purpose of the contract, although it has proved to be an incident of it. Insolvency was not then anticipated by either bank. Had it been, the defendant certainly would not have entered into it. The plaintiff's position, then comes at last to this: That the contract, sanctioned by the local precedents and customs covering many years, forbidden by no statute, entered into in good faith and for mutual helpfulness, is void, and, therefore, non-enforcible because it happens, in the changed conditions resulting from unexpected insolvency, that through it some depositors secure a preference. To state the proposition is to refute it. More than that, the proposition was necessarily involved and, therefore, passed upon in *O'Brien* v. *Grant*. It seems to me to have been explicitly passed upon, although the proposition now presented was differently and not so well expressed as in this case.

It is further objected by the plaintiff that the Bank of Staten Island had not complied with all the provisions of the amendment to the Clearing House rules adopted February 11, 1903. As I find the fact to be otherwise there is no occasion for further consideration.

The claim that the defendant could have avoided redemption of the checks by signifying its intention to withdraw from the Clearing House Association, while not clearly demonstrated, may from my point of view be treated as if it were, without resulting in help to the plaintiff. The defendant could not take such step, or any step in the direction of avoiding the contract to which the Clearing House Association was a party, without injury to it. It was not called upon to suffer any injury whatever. It was to save it from injury generally that the collateral was placed in its hands, and specifically to save it harmless because of checks redeemed, as these were, for the Bank of Staten Island through the Clearing House,

after completing the exchanges of the morning following the notice of discontinuance of the arrangement.

The defendant was obliged to employ counsel and incur other expense in collecting the bills receivable. The charges made for the services rendered were reasonable, and; therefore, should be allowed to the defendant. (*Bank of Staten Island* v. *Silvie*, 89 App. Div. 467 ; *Field* v. *Sibley*, 74 id. 81 ; affd., 174 N. Y. 514.)

The charge of the defendant for protest fees, incurred in protesting the checks redeemed by it, is not free from doubt. Had it taken such action of its own motion, clearly the charge could not be allowed, for protest was not necessary. But it did nothing of the kind. It did not even advise protest. It protested the checks because, and only because, the Superintendent of Banks requested it to do so. He was then in possessson of the bank, and for the time being had authority to take the necessary steps to protect its assets. He chose as one step in that direction to protest the redeemed checks — a needless step, surely. But, in view of the fact that the direction came to the defendant from one who represented all the power that the State had conferred for the purpose of temporarily protecting the assets of banks in trouble, it would seem as if services which he deemed necessary for such purpose should be paid for, although he was in fact mistaken as to the necessity of it.

The complaint should be dismissed.