Johnson, J.
 

 delivered the opinion of the court. The plaintiff’s counsel insists, in the first place, that the note upon which this action was brought had a legal inception in the hands of Crandall. If this is so, no subsequent negotiation of it upon an usurious consideration could defeat the action against the maker. If this point should be decided against him, he then contends that there was no evidence of usury sufficient to have been submitted to the
 
 jury;
 
 but if wrong in this, he further maintains that the usurious contract which the evidence tended to prove, was so far variant from that set up in the answer, that it could not be rightfully received, and that upon this ground the ruling at the trial ought to be sustained.
 

 (1.) The transaction between the defendant and Crandall is obscurely stated. It is, however, pretty apparent that the note was delivered to the latter to enable him to raise money by negotiating it. Whether he was to do this for the benefit of the defendant and as his agent, or whether the note was lent to him for his own accommodation, is not clear. But in either case, the paper did not become operative until it was passed away for value. There seems to me to be no foundation for the argument that Crandall purchased the note of the defendant, and the case is not within the reason of those decisions in which it is held that an exchange of notes constitutes them both busi
 
 *364
 
 ness paper.
 
 (Dowe
 
 v.
 
 Schutt, 2 Denio,
 
 621,
 
 and the cases cited.)
 
 The remark of the witness that he would have paid' the defendant for the notes if he had called for it, and the witness
 
 had got the money,
 
 implies very strongly that the notes were to be used to raise money for the benefit of the defendant. He says, in terms, that the defendant received no consideration for the notes. If this is to be understood literally, it of course puts an end to the idea that the note had become operative when delivered to him. If he means only to negative the fact of payment in money, and to have it understood that he made some engagement which was equivalent to his own note, and which would constitute a consideration for the transfer to him of the note in question, the arrangement should have been stated with such perspicuity that the court could judge of its character and effect. Upon the testimony which was given, I am of opinion that the jury might rightfully have found that the note in question was delivered to Crandall to enable him to raise money upon it for the benefit of the defendant, or for his own accommodation.
 

 (2.) The evidence of usury was sufficient to be submitted to the consideration of the jury. On the 18th March, 1851, Davenport borrowed $1500 of Beecher, and the question is, whether this money was lent at an usurious rate of interest. Davenport was not able to deny positively that there was an agreement for illegal interest. He could not recollect. The case is pretty much as it would be if there was no direct evidence of the making of the, contract. On the ninth of April, twenty-two days after the loan, Davenport paid, and Beecher received, $51.88 “for the use of the $1500 from the 18th March, to that day.” This was some evidence of an agreement for a rate of interest which would produce that amount, coeval with the loan. I agree with the court below, that evidence of prior usurious loans would not alone affect this
 
 contract;
 
 but connected, as that evidence was, with the subsequent receipt of usurious interest for all the time which elapsed between the loan and the receipt of that money, it made a case to be left to the jury. I do not say that they must necessarily have found that the loan was usurious,
 
 *365
 
 but only that the evidence was suitable to be submitted to them.
 

 (3.) It is the remaining question which alone presents any difficulty. There is a wide discrepancy between the usurious contract set up in the answer and the one which the evidence tended to prove. According to the former, the note in controversy was negotiated, by being delivered, together with six other notes, which are described, as collateral security for the payment of three several sums of $500, $1000, and $1300.75, lent at different times by Beecher to Crandall, at a rate of interest equivalent to 18| cents per day on $100. According to the testimony, this note and three others, only one of which corresponds with any of the six notes mentioned in the answer, were transferred as security for one sum of $1500 loaned on the 18th March, 1851, to Crandall by Beecher ; and the rate of interest indicated by the evidence would be something over twenty-two cents per day on $100, instead of the rate mentioned in the answer. There is a correspondence between the allegations and the proof to this extent: they concur in the position that the note in suit was transferred by Davenport to Beecher with other notes, as security for a loan made by the latter to the former, which loan was at an usurious rate of interest, and in respect to which Davenport also gave to Beecher his check on a bank. The point as to the variance I understand to have been made by the objection which the defendant took, that the proof was not within the issue in the cause. If the code of procedure has not changed the rule which is to govern this case, the court below was clearly right in holding, as it did, that there was a fatal variance. The cases are uniform and consistent, and several of them are referred to in
 
 Rowe
 
 v.
 
 Phillips,
 
 (2
 
 Sandf. Ch. R.
 
 14.) The code, however, contains provisions on the subject of variances, applicable to all actions; and if they establish a different rule from the one recognized in these cases, we are bound to apply it, though thereby the plaintiff may suffer loss, which by the defendant’s slip in pleading he would have avoided under the former rule. It is provided, in the first place, that no variance
 
 *366
 
 between the allegation in a pleading and the proof shall be deemed material, unless it shall
 
 actually
 
 have misled the adverse party to his prejudice in maintaining his action or defense. (§ 169.) Then, it is not left to the judgment of the court whether, in a given instance, it was calculated to mislead, and from thence to hold that it did mislead; but whenever it is alleged that a party has been misled, that fact must be
 
 proved
 
 to the satisfaction of the court, and the proof must show in what respect he has been so misled; and thereupon the court may order the pleading to be amended upon such terms as shall be just.
 
 (Id.)
 
 Where the variance is not material as above provided, namely, when the party has not proved that he has been actually misled, the court may either direct the fact to be found according to the evidence, or may order an immediate amendment without costs. (§170.) But if an allegation is unproved, not in some particular or particulars only, but in its
 
 entire scope and
 
 meaning, it is not to be deemed a case of variance, but a failure of proof. (§ 171.) These provisions introduce a principle unknown to the former practice, namely, that of determining this class of questions, not by the incoherence of the two statements upon their face, and hence inferring their effect upon the state of the preparation of the party, but by proof
 
 aliunde,
 
 as to whether the party was actually misled, to his prejudice, by the incorrect statement. In this case the plaintiff did not offer any proof of the character suggested, nor did he even allege that he had been misled. He put himself upon the principle of the old rule, by alleging that the usurious contract set up in the answer-was different from that indicated by the proof,.and hence insisting that the proof was not within the issue. If then the discrepancy was a variance, as defined by these provisions, it should have been regarded as immaterial; and the only question is, whether it was a fault of that character, or a failure of proof as defined by section one hundred and seventy-one. What was the
 
 “scope
 
 and meaning” of the allegation of usury in the answer ? In general terms, it was that the note was negotiated at its inception upon an usurious consideration.
 
 *367
 
 Such a general allegation in an answer, it is conceded, would be bad for its generality. But certain particulars were added, which were true: the name of the party to whom the note was passed was given; the general character of the transaction was stated, to wit, that it was delivered to that person with other notes, as collateral security for a loan of money, and the name of the borrower was correctly stated. To this was added the fact, with which the evidence corresponded, that the loan was evidenced by the check of the borrower. Then certain circumstances, were stated, which have already been mentioned, which the evidence did not confirm, but disproved; that is to say, the particular additional notes transferred for the same purpose, the number of the loans, and the amount, and the rate of the. usurious interest. In my opinion, these circumstances were accidental merely, and did not constitute the entire scope and meaning of the allegation, in the sense of the provisions of the code.
 

 We are not, I conceive, warranted in applying a different rule to the defense of usury, from that which we would hold applicable in other cases. It is a defense allowed and provided by law. The defendant, in seeking to avail himself of the evidence, notwithstanding the variance, did not claim an indulgence from the court, but simply asked for the application of those rules which the legislature has provided for all cases indiscriminately, whether the party invoking their exercise was seeking to visit his adversary with a forfeiture or not. The law- has not made any distinction between such defenses and those where no forfeiture is involved, and the court can make none. If the sense of the legislature is plainly expressed, as it seems to me to be, we have no judgment to pass upon the policy of these provisions. It is apparent, that in many cases the record will not furnish a true account of the issue actually tried and determined, and I can foresee some difficulty when it shall be necessarily used as evidence of a former judgment. Perhaps some of the inconveniences which might be expected to ensue may be avoided by the provisions of section one hundred and seventy-three, by which the courts are authorized, even after judgment, to conform the
 
 *368
 
 pleading to the facts proved. But, however this may be, we cannot dispense with the new rule which the code has established. I cannot doubt that the difficulty under which the defendant labored in this case was a variance merely, which, not having been proved to have misled the defendant, should have been considered immaterial. The judgment should be reversed, and a new trial ordered in the superior court. ,
 

 Judgment accordingly.