ELIJAH B. SMITH AND THE FIRST NATIONAL BANK OF ELMIRA, APPELLANTS, v. JOHN T. RATHBUN AND NEWTON P. FASSETT, EXECUTORS OF SIMEON BENJAMIN, DECEASED, AND JOHN T. RATHBUN, RESPONDENTS.

*Judgment on demurrer — order refusing, not appealable — Amendments to pleadings — power of referee to allow — Duty as to return of pleading.*

An order of the Special Term denying a motion for judgment on the ground of the frivolousness of a demurrer, is not appealable to the General Term. *

A referee has the same power to allow amendments as the court upon the trial of an action.

Such amendments may be allowed either to meet an immaterial variance between the pleadings and the proof, or for any other purpose, provided it does not change substantially the cause of action or defense.

When a party claims to be taken by surprise, or misled to his prejudice, by the amendment, proof of such facts must be furnished; without such proof the variance will not be deemed material.

A referee is not obliged to wait until all the evidence is introduced before allowing an amendment to cure a variance, but may permit such amendment to be made at the commencement of the trial, so as to make the pleadings conform to the evidence which the party proposes to introduce.

Where a referee allows a plaintiff to amend his complaint by adding thereto allegations which do not substantially change the cause of action set forth therein, he cannot allow the defendant, who has theretofore answered, to interpose a demurrer thereto.

Where a referee has allowed a defendant to serve a demurrer to a complaint so amended, the plaintiff is not confined to an appeal from the order of the referee, but may move at Special Term to have the demurrer stricken out.

Rule 26 does not apply to such a case, and the plaintiff is not obliged to return the demurrer.

Although the terms upon which an amendment is allowed rest in the discretion of the referee, yet if he impose terms which he has no authority to impose, it ceases to be a matter of discretion, and his mistake may be corrected.

* Such an appeal is expressly forbidden by section 537 of the Code of Civil Procedure. — [REP.

APPEAL from an order denying a motion to set aside a demurrer, served during the trial of the cause, as irregular and unauthorized, or to adjudge it to be frivolous.

The action was commenced in 1869 by Elijah B. Smith, as sole plaintiff. The complaint alleged, among other things, "that in or about the month of November, 1863, a banking association and corporation, known as the First National Bank of Elmira, was organized and incorporated and commenced doing business in the city of Elmira, in pursuance of an act of congress passed February 25, 1863, and had continued to do banking business at Elmira, aforesaid, ever since under said act, and the amendatory and subsequent acts of congress authorizing such banking; that the capital stock consisted of 1,000 shares of the nominal or par value of $100 each; that the plaintiff in this action, at the time of the organization of said bank, owned, and still owns, fifty of said shares; that from the time of the first organization of said bank until in October, 1867, Samuel R. Van Campen was the president, one Simeon Benjamin was vice-president and the defendant John T. Rathbun was a director of said bank; that until in or about the month of October, 1867, the business of said bank was profitable, the shares of stock greatly increased in value, and became and were of the market value of $150 each.

And on his information and belief the plaintiff further says and charges, that in and prior to 1867 the said Van Campen, in violation of his duty as president of said bank, and contrary to law, loaned from the funds of the said bank to divers individuals and to insolvent persons, without sufficient security, large sums of money, "exceeding at times one-tenth of the capital of the bank, whereby the said bank sustained great losses; and that he, the said Van Campen, borrowed, or took, from the funds of the bank for his own private use, and appropriated to his own use large sums, varying from $1,000 to $75,000 at a time; that he was insolvent at the time and unable to pay his debts; that he, the said Van Campen, as such president, made untrue quarterly reports of the condition and resources of the bank, representing worthless securities, or securities of little value, transferred by himself to the bank, to be other and valuable securities, and so reporting the same; and that the said Van Campen, as such president, was guilty of other acts of misconduct, of all of which the plaintiff was ignorant, whereby, and by

reason of the acts before mentioned, the said banking association sustained great losses and the said shares of stock became, and were and now are, of little or no value.

"And on his information and belief the plaintiff further says, that the said Simeon Benjamin and John T. Rathbun, while such officers of said bank, in and prior to 1867, were informed and knew of the doing of the said wrongful acts by the said Van Campen, that he had thus violated, and was violating, his duty as such officer of the bank; that they negligently permitted and allowed him to do and aided, countenanced and assisted him in so doing and concealed the facts from the plaintiff and other stockholders, and allowed and permitted and assisted the said Van Campen to so draw out, loan and use and waste the funds and property of said association, the said bank, and to remain and act as president thereof and thus defraud and injure the plaintiff, whereby the plaintiff has sustained damages to the amount of $6,888.44, with interest thereon from July 27, 1867, when dividends were last paid on said shares of stock."

The defendants Rathbun and the executors separately demurred to the complaint. The court at Special Term overruled the demurrer. From the order entered thereon the defendant appealed to the General Term, where that order was reversed with leave to plaintiff to amend by adding, or bringing in, the First National Bank as a party on payment of costs, which was done. The defendants then moved at General Term to change or modify the order by striking out the bank as a party, which motion was denied.

The amended complaint having been served the defendants answered it; and the cause being thus at issue on the defendants' answer was, by consent, referred to the Hon. Sterling G. Hadley, as sole referee, to hear and determine the same.

On the 20th of November, 1876, the cause was brought to trial before the referee. On the second day of the trial the plaintiffs asked to amend their complaint by adding after the words "Simeon Benjamin was a vice-president" the words "and a director."

The defendants' counsel objected, but the referee allowed the amendment. No amended complaint was made or served; but the defendants' counsel, then, before any further testimony was taken, in pursuance of an order of the referee, served upon the plaintiffs' attorney a demurrer, by or for both defendants, to the whole com-

plaint. Plaintiffs' attorney insisted, at the time, that defendants had no right to serve the demurrer at that stage of the case, or because of that amendment, and gave notice that he should move to strike it out or set it aside.

The referee, then, against the remonstrances of plaintiffs' counsel, adjourned, or suspended, the trial of the cause to await such disposition as might be made of the demurrer.

Before the expiration of twenty days the defendants' counsel served, by mail, an amended demurrer. The plaintiffs' attorney immediately gave notice that he declined to accept or receive it, or to recognize the right of the defendants' attorneys to serve it; and on the papers in the case showing the above facts the plaintiffs' counsel made a motion to strike out or set aside the demurrer as irregular or unauthorized, or in case the court should refuse to strike it out or set it aside, then that the demurrer be adjudged frivolous.

The court denied the motion to strike out, and also refused to adjudge the demurrer frivolous.

From that decision and every part of the order this appeal was brought.

*E. H. Benn,* for the appellants.

*H. Boardman Smith,* for the respondents.

BOARDMAN, J. :

The questions arising upon this appeal involve, first, the nature and effect of the amendment to the complaint and the power of the referee to allow it, and, second, the regularity and validity of the demurrer. The question as to the frivolousness of the demurrer cannot be considered here. That has been passed upon by the Special Term, and its decision is clearly not appealable. (*Dabney* v. *Greeley,* 12 Abb. [N. S.], 191.)

It is clear that the referee had power to allow the amendment in either of two cases: First, if it was to meet an immaterial variance between the pleadings and the proof (Code, §§ 169, 170); second, if it did not change substantially the cause of action. (Code, § 173.) To decide whether the amendment falls within

these cases we must consider the nature of the complaint. The gist of the complaint is, that the defendants " negligently permitted and allowed " the president to do the wrongful and fraudulent acts set forth, " and aided and countenanced and assisted him in so doing," by reason whereof the plaintiffs were damaged in their property. It alleges, therefore, both negligence and fraud. Now we might consider both of these allegations as being, in effect, but one cause of action ; and this seems to have been the view taken by the court in the decision of the former demurrer. (66 Barb., 402.) It is there said " the acts set forth in the complaint are fraudulent acts." And again, " I am also inclined to hold, that when directors  *  *  *  knowingly and in violation of their duty commit fraud,  *  *  *  or knowingly allow it to be done by one or more of their associates or chosen officers, they become answerable *individually* to stockholders or other beneficiaries of the fund, on the basis of fraud." It is plain, I think, from this language, that while the court puts the responsibility on the basis of fraud, it means by " fraudulent acts," not merely acts fraudulent *per se*, but also, willful negligence, in permitting and allowing such acts. I do not think, therefore, that the decision will bear the construction put upon it by the defendants' counsel, viz., " that a part of the directors of a corporation may " be sued by the stockholders for fraud, but *not* for negligence. Whether the acts complained of were fraudulent or only willfully or knowingly negligent, the gist of the allegation is, that they were wrongful, tortious acts, based upon fraud, and for which the guilty person was responsible in damages. But suppose that these are separate causes of action ; they were none the less alleged in the complaint before the amendment was made. The most that can be said is, that they were not properly separated ; and that the cause of action for negligence was defectively and incompletely stated. It cannot be said that it was not stated at all. Now the amendment was made to remedy this defect, to complete and fill out the cause of action which the plaintiff intended and endeavored to allege, but did not allege in full. There was no new cause of action alleged nor any radical change made in the issue presented. It follows, therefore, that this amendment might be allowed, either as an allegation which did not change substantially the cause of action, or as an amendment to meet a variance between the plead-

ings and the proofs that plaintiffs expected to introduce. The amended complaint could have been met on the trial by a corresponding amendment to the answer not introducing a new defense, thus effectually protecting defendants' rights, and the trial could have proceeded. But if defendants were taken by surprise or were misled to their prejudice, they had a remedy, viz., to make proper proof of that fact, and thereupon they would have been 'entitled to an adjournment and upon application to the court, to the privilege of answering or demurring. Such proof is indispensable. Without it no variance will be deemed material. (*Catlin* v. *Gunter*, 10 How., 315 ; S. C., 11 N. Y., 368.) No such proof was made in the present case.

But defendants claim that this was not a case of variance at all. They do not rest this claim upon the ground that the cause of action is unproved in its entire scope and meaning, so as to be deemed a failure of proof under section 171 of the Code, but upon the ground that no proof was made upon the trial that Mr. Benjamin was a director. Evidence, however, was repeatedly offered to show that Mr. Benjamin was a director, and it was excluded by the referee because the fact that he was a director was not alleged in the complaint. It was to meet this state of things that the amendment was made. The referee was not obliged to wait until all the evidence was in before allowing the amendment ; he could make it also before the evidence began, so as to make the complaint conform to the proofs the plaintiffs proposed to introduce. Such an amendment was made in *Therasson* v. *Petersen* (22 How., 98), and the court, on appeal, held that it was proper.

If the foregoing views are correct, the defendants had no right to demur arising from the nature or effect of the amendment. It introduced no new cause of action ; it did not change substantially the issue involved, and it did not surprise or mislead the defendants to their prejudice. This conclusion is supported by the case of *Therasson* v. *Petersen* (*ante*), In that case the answer was amended on the trial to meet the proofs defendants expected to introduce. Plaintiffs made no proof of surprise or prejudice, but merely proposed to demur to the amended answer on the ground of insufficiency. Leave to demur was refused; and upon appeal, the General Term sustained the refusal.

But it is said that the amendment was "in matter of substance," and that under 2 Revised Statutes (Edm. ed., 442, § 2), the defendants were entitled to answer, and by implication, to demur. This provision of the Revised Statutes is, no doubt, still in force, but it must be construed in connection with the subsequent provisions of the Code. The cases cited by defendants' counsel do not sustain their position. In *Harriott* v. *Wells* (9 Bos., 631) the judge at Special Term says : "the right to answer amendments under the chancery system was absolute," but speaking of the practice under the Code, he says : "If the variance was immaterial no amendment was necessary. If made under section 170 of the Code no amendment was necessary or proper. But if, under section 173, the amendment substantially changed the claim, the amendments were necessary and could only be allowed (if at all by the court " (that is, at the Special Term), " and then a right to answer must exist." (Page 633.) That case was tried before a referee, and the amendment allowed by him substantially changed the claim. The complaint was on a sealed contract and averred a strict performance of all the conditions necessary to establish a cause of action. The proof showed failure in the performance of a condition precedent, and plaintiff gave evidence to show a waiver by defendants of this condition. The referee allowed plaintiff to amend by alleging this waiver; that is, he allowed him to allege a new parol contract, thus changing substantially the issue. Defendants asked to amend by setting up a new defense to this new issue, viz., the statute of limitations, whereupon the referee referred the whole matter to the Special Term. It is plain that the referee erred in allowing the amendment. He would have erred still further if he had allowed the new defense. But the Special Term allowed the new defense, and the General Term affirmed its decision. With this decision we have no fault to find. The Special Term has the power to allow a new cause of action, or a new defense, but a referee or the court, on the trial, has not. (*Ford* v. *Ford*, 53 Barb., 525.) In the case of the *Union Bank* v. *Mott* (19 How., 267 ; S. C., 11 Abb., 42), also cited, the amendment introduced a new cause of action. It was allowed by the referee, but his order was set aside by the court at Special Term. The court then, on motion, allowed the amendment to be made, but in the absence of cause shown, did not allow the defendants to answer anew or to

demur. The General Term, however, on appeal, allowed them to answer. These are the principal cases cited by defendant's counsel in this connection. Instead of supporting his position they bear distinctly against it. If we are to construe the provisions of the Revised Statutes in question in accordance with these and the other decisions under the Code, I think an amendment " in matter of substance " must be taken to mean where there is a material variance, or a new cause of action alleged, or a substantial change made in the claim, and that even then leave to answer will be given only on application to the Special Term. In the case of a trial before a referee there are still other reasons why a demurrer should not be allowed. It does more than introduce a new defense; it changes the issue from one of fact to one of law, strikes out the answer, and, in effect, vacates the order of reference, for there is no issue of fact left for the referee to try.

A question is made in this case, whether the referee actually gave the defendants leave to demur, and a mass of affidavits is introduced upon either side. Defendants claim that he did, at the same time that he gave leave to amend the complaint. This the plaintiffs deny. I am satisfied, upon examination of these affidavits, and from the stenographer's report, that the referee intended to give and, as matter of fact, did give leave to demur. In view, however, of the conclusion arrived at, it does not seem to me of much importance. If he did not, the demurrer is clearly unauthorized. If he did, the conclusion defendants seek to draw, that, therefore, the demurrer is neither unauthorized nor irregular, and must be sustained, does not follow; for he exceeded his authority so palpably that his order must be disregarded. The same considerations dispose of the view that leave to amend the complaint was given, only upon condition that defendants should have leave to demur, and that the terms upon which the amendment should be granted were discretionary with the referee and not subject to review. But the discretion of a court or referee is not purely arbitrary. It must be regulated by legal principles, and it can be exercised only within the limits prescribed. When it is said that a referee may impose terms in his discretion on allowing an amendment, it merely means that he may do so within his lawful powers. If he exceeds his authority and imposes terms he has no lawful power to impose, it ceases to be a matter of discretion, and his mistake may be corrected.

Have the plaintiffs mistaken their remedy? Defendants insist that they should have appealed from the order of the referee instead of moving to set aside the demurrer. There is no doubt that an appeal would be the most regular course to take, but it is not the only course. In *Ford* v. *Ford* (53 Barb., 525), it is held, that where an order is made by a referee which he has no authority to make, the aggrieved party is not restricted to an appeal for redress, but is entitled to a more expeditious and less expensive mode, viz., he may move, at Special Term, to set it aside. The same reason given applies in the present case, and I see no good cause why the plaintiffs should not be allowed to move to strike out the demurrer, more especially as it is in effect the same as moving to set aside the order. It is asking that the order be disregarded. At least it does not seem to me to be so irregular as to justify us in holding that the motion ought to have been denied on that account.

The objection that plaintiffs ought to have returned the demurrer to defendants' attorneys is not well taken. Rule 26, cited by counsel, has no application whatever. That has reference to pleadings or other papers objected to either because they are not folioed or not legibly written, or because they are letter-press copies; and the provision is that they must be returned within twenty-four hours or the objection will be considered waived. The case of *Rogers* v. *Rathbun* (8 How., 466), also cited, held that an amended complaint which the defendant proposed to disregard ought to have been returned, or notice given to the plaintiff that defendant intended to disregard it as unauthorized. Now, in the present case, the plaintiffs gave notice on the trial that they considered the demurrer as unauthorized, and again, immediately upon the receipt of the amended demurrer, plaintiffs' attorney wrote to defendants' attorney that he should disregard it as unauthorized. Besides, I think the plaintiffs had a right to elect whether they would return it and treat it as an absolute nullity, or move at Special Term to strike it out. (*Fredericks* v. *Taylor*, 52 N. Y., 596.)

It is not necessary to consider defendants' preliminary objections to the affidavit of the referee. The only question affected by it, viz., whether leave to demur was given by the referee, has been decided in defendants' favor.

In any view of the case I think the demurrer is irregular as to

the defendant Rathbun. The original complaint alleged that he was a director, and the amendment did not and could not affect the cause of action alleged against him. It affected only the executors of Benjamin. If the considerations hereinbefore stated are just, the demurrer was equally illegal and invalid as to the executors of Benjamin. The amendment allowed to the complaint was not of a character to change the cause of action. It was not a material variance. The referee had, therefore, the power to allow it. But it did not follow, nor was it true, that the defendants, for that reason, had the right to answer or demur of course. The referee had not the power to grant the defendants that privilege, and no case was made by virtue of which they could apply to the court therefor.

We conclude, therefore, that the order of the Special Term should be reversed, with ten dollars costs and expenses of printing, and the demurrer to the complaint, as amended on the trial, should be stricken out as irregularly and improperly interposed, with ten dollars costs of the motion to plaintiffs.

LEARNED, P. J. :

Concurring with the views of my brother BOARDMAN, I remark that the power of the referee to allow amendments is that possessed by the court " upon such trial." This does not mean a change of the issue from one of fact to one of law. The referee should have amended the complaint as requested ; should have amended the answer (if any amendment was rendered necessary by this mere insertion of the word " director ") and should have proceeded with the trial. There could have been no surprise on the defendants. They well knew the fact that Benjamin was a director. Indeed their affidavits show that they had looked forward to the possibility of such an amendment.

The object of this freedom of amendment is to facilitate the trial of the facts, not to afford opportunities for delay.

Present — LEARNED, P. J., and BOARDMAN, J.

Order reversed, with ten dollars costs and printing disbursements, and motion granted with ten dollars costs.