JULIA B. FELLOWS, as Executrix, etc., Respondent, *v.* FRANCES LONGYOR, Impleaded, etc., Appellant.

Where the guardian of an infant loans moneys belonging to his ward, receiving securities for the amount loaned, with lawful interest; but as an inducement to make the loan, receives a sum of money, as a bonus, for his own benefit, from the borrower, who pays the same with knowledge as to the title to the moneys loaned, this does not make the transaction an usurious loan. The guardian is not a lender of the trust fund, within the meaning attached to that term by our statutes, relating to usury.

The circumstance that the guardian has given a bond for the faithful performance of his duties does not affect the character of the transaction or of the securities so taken.

(Argued January 24, 1883; decided February 9, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made January 22, 1881, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*F. Brundage* for appellant. If this contract for loaning was made by the guardian as such, and the security taken to him in his official relation, the bond and mortgage is nevertheless usurious, the guardian, by virtue of his office, being the only person who can contract. (*Stout* v. *Rider*, 12 Hun, 574; *Van Wyck* v. *Walton*, 16 id. 209.) The legal title to the personal estate is vested in the guardian, while the equitable title remains in the infants. Being vested with the legal title, he had full power to dispose of the funds of his wards as he might choose. (*Manson* v. *Pelton*, 13 Pick. 206, 212; 1 Parsons on Contracts, 121, 133.) The plaintiff, having derived his title from the person who made the usurious contract, has no claim to be the champion or protector of the infants, and acquires no rights by assuming that character. (*Burdick* v. *Jackson*, 7 Hun, 488, 491.)

*Geo. W. Cothran* for respondent. A party alleging the defense of usury, so highly penal in its character, must allege the usurious agreement specifically in all its parts, and is bound to prove the defense as alleged. (Tyler on Usury, 458–464; *Vroom* v. *Ditmas*, 4 Paige, 526; *N. O. G. L. Co.* v. *Dudley*, 8 id. 452, 456–457; *Rowe* v. *Phillips*, 2 Sandf. Ch. 14; *Manning* v. *Tyler*, 21 N. Y. 567; *Fay* v. *Grimsteed*, 10 Barb. 321; *Gould* v. *Horner*, 12 id. 601; *Clarke* v. *Hastings*, 9 Gray, 64.) It does not render a transaction usurious for the agent making the loan to exact a bonus for his own use, so long as it is unknown to the lender, and the lender is not to be benefited thereby. (*Estevez* v. *Purdy*, 66 N. Y. 446; *Condit* v. *Baldwin*, 21 id. 219; *Lee* v. *Chadsey*, 3 Abb. Ct. of App. Dec. 43; *Guardian Mut. L. Ins. Co.* v. *Kashaw*, 66 N. Y. 544.) Where the agent takes a security in his own name, but which really secures a debt due to his principal, the principal may sue upon the security and allege that it was made to him. (Code of Procedure, §§ 111, 113; Code of Civil Procedure, § 449.)

RUGER, Ch. J. This action is brought to foreclose a mortgage of $5,000, given March 29, 1870, by appellant, Frances Longyor, to one Abner P. Downer, guardian, etc., upon lands in Niagara county. The mortgage was assigned by Abner P. Downer, guardian, etc., to the plaintiff, on the 12th day of June, 1876, which assignment contained a covenant on the part of · the said Downer that the sum of $5,322 was unpaid thereon, that there were no defenses or offsets to said mortgage, with a guaranty of its collection.

The whole sum secured to be paid becoming due in May, 1878, this action was commenced to foreclose. The mortgagor, Frances Longyor, answered, pleading the defense of usury, alleging that the mortgage was given by the defendant to Abner P. Downer to secure a loan of $5,000, and that it was, at the time of such loan, corruptly and against the form of the statute, agreed between the defendant and Downer that she should pay him the sum of $300 for the loan and forbearance of said money ; that the loan was afterward made and the $300 paid to Downer by defendant.

Upon the trial the proof established and the court found the following facts among others : that Abner P. Downer was, at the time of this transaction, the duly appointed guardian of his infant brother and sister, William V. Downer and Alice M. Downer ; that he had accepted the office and executed bonds for the faithful performance of his duties, and that from the funds belonging to his wards the loan in question was made ; that in February, 1870, one John H. H. Clark, the son of the defendant Frances Longyor, was the owner of a bond and mortgage given to him by his mother, to secure the sum of $2,270 with interest; that the defendant, being desirous of borrowing a sum of money, authorized Clark to obtain it ; Clark applied to Downer for a loan which resulted in an agreement "that Downer should purchase of Clark his bond and mortgage of $2,270 and loan Frances Longyor the additional sum of $5,000, and that Downer, for the purchase of the bond and mortgage, and for making the loan, should be allowed a discount from the amount due on the Clark bond and

mortgage, of the sum of $471.48. This transaction was consummated by the assignment by Clark to Downer of his mortgage, and the payment to him by Downer of the amount secured by this mortgage, less the sum of $471.48.

Afterward, and on the 29th of March, 1870, the defendant, Frances Longyor, executed to Abner P. Downer, guardian, etc., to secure the loan to her, the bond and mortgage in suit, and upon its delivery to Downer, received from him, through her agent Clark, the full sum of $5,000.

The court further found that the sum of $471.48, agreed to be deducted from the face of the Clark bond and mortgage, was fixed upon and deducted as a sum to reward Abner P. Downer, personally, for making such purchase and loan, and was so understood by both parties, and it was not intended by Downer that it should be paid over to the persons for whom he was guardian; that Clark and Longyor both knew at the time of the making of this purchase and loan that the moneys used for that purpose belonged to the funds in Downer's hands as guardian of his brother and sister, and that it was the purpose and intention not only of Downer, but also of Mrs. Longyor and her agent Clark, to have the bond and mortgage in question made payable to Abner Downer as such guardian. The court also found that at the time of the trial the general guardian had settled with and paid his wards, but when did not appear; and finally that this transaction was not usurious, and that the securities were valid in the hands of the plaintiff. The above are substantially all of the findings material to the questions raised on this appeal.

There is no evidence or finding as to the actual value of the Clark mortgage at the time of this transaction. Neither is there any finding as to what specific sum, if any, was to be allowed to Downer for the loan of the $5,000. The court refused to find that the sum of $300 was to be allowed for such purpose. We are now asked to reverse the judgment rendered upon this report, and to declare the transactions in question usurious as matter of law.

Decisions are quite numerous to the effect that the purchase

of interest-bearing notes or mortgages at less than their face value, though their payment be guaranteed by the vendor, are not necessarily usurious. (*Brooks* v. *Avery,* 4 N. Y. 225 ; *Cram* v. *Hendricks,* 7 Wend. 569 ; *Thomas* v. *Fish,* 9 Paige, 478 ; *Catlin* v. *Gunter,* 11 N. Y. 368 ; *Cobb* v. *Titus,* 10 id. 198.) There is no presumption that a mortgage is of the value of the sum appearing as unpaid thereon, especially when it is transferred in connection with a loan which is claimed to be usurious on account of the difference between the price paid and the amount purporting to be unpaid thereon.

SAVAGE, Ch. J., says : " Usury is a defense which must be strictly proved, and the court will not presume a state of facts to sustain this defense where the instrument is consistent with correct dealing." (*Marvin* v. *Feeter,* 8 Wend. 533. See, also, *Smith* v. *Marvin,* 27 N. Y. 142 ; *Mutual Life Ins. Co.* v. *Kashaw,* 66 id. 544 ; *Thomas* v. *Murray,* 32 id. 610.)

From the findings in this case, and the absence of any proof of value, we might well presume that the price paid by Downer for this mortgage represented its actual value. To hold otherwise would require us to decide as matter of law in order to support a defense of usury, that this mortgage was of greater value than the price paid, although the findings of the court below are not inconsistent with the fact that the mortgage may have actually been worth much less. But it is unnecessary, and perhaps under the peculiar condition of the findings in this case, improper to dispose of the case upon this ground, as we think the judgment sustainable upon another theory. The funds with which this loan was made did not in equity belong to Abner P. Downer, but were the property of an estate of which he was the representative. He could not use those funds for his own purposes, and had the right to invest them only in obedience with settled rules of law relating to the investment of trust funds. These rules forbid their employment in illegal or speculative transactions as well as in the purchase of doubtful and indiscriminate securities.

It was said by Judge WOODRUFF, in the case of *King* v. *Talbot* (40 N. Y. 84) : " It is not true that there is no under-

lying principle or rule of conduct in the administration of a trust, which calls for obedience. Whether it has been declared by the courts or not; whether it has been enacted in statutes or not; whether it is in familiar recognition in the affairs of life, there appertains to the relation of trustee and *cestui que trust* a duty to be faithful, to be diligent, to be prudent in an administration intrusted to the former, in confidence in his fidelity, diligence and prudence."

" This necessarily excludes all speculation, all investments for an uncertain and doubtful rise in the market, and, of course, every thing that does not take into view the nature and object of the trust, and the consequences of a mistake in the selection of the investment made."

The guardian, Abner P. Downer, stood in the relation of an agent to this property; not only that, but an agent bound in law to execute his power over the funds in a special, limited and lawful manner, and who could be relieved from this duty only by the order of a court having jurisdiction of the matter. The defendant knew the limit and extent of the trustee's authority, for that was defined by rules of law, of which she, like all others, must be presumed to have had knowledge. Knowing this, she approached the guardian to procure moneys belonging to this estate, and sought to accomplish her purpose by offering a personal inducement to the custodian of these funds. It is impossible to hold that this transaction was usurious. A trustee, although he may be vested with title to the trust fund, has a mere naked title, without any proprietary or disposable interest in the property. His power over it is limited either by known rules of law or those capable of easy ascertainment, and he cannot be considered the lender of the trust funds within the meaning attached to that term by our statutes relating to usury. By the contract of loan, the real lenders were not to receive any thing in excess of legal interest.

The principles frequently declared by this court seem to preclude any view of this transaction which would lead to a contrary conclusion. The cases are quite numerous to the effect that where an agent loans moneys belonging to his principal,

and as a condition of the loan receives a bonus from the borrower for his own benefit, without the knowledge, consent, or authority of his principal, the security taken for such loan is not thereby rendered void for usury. (*Condit* v. *Baldwin*, 21 N. Y. 219 ; *Bell* v. *Day*, 32 id. 168 ; *Estevez* v. *Purdy*, 66 id. 446 ; *Mutual Life Ins. Co.* v. *Kashaw, supra.*) In analogy with this principle, we think the transaction in question was not usurious. The borrower here was informed that the funds proposed to be used were not the individual funds of Abner P. Downer. She treated with Downer as the representative of principals who were the real owners of the fund from which the loan was made. Not only this, but she also knew that these were trust funds, subject in their disposition and control to the rules governing the investment of trust estates, and from the very nature of the case that their custodian was forbidden by law from engaging in illegal transactions with such funds. She entered into this contract, therefore, knowing that Downer did not, and could not, have authority to enter into a usurious contract on behalf of his principals ; not only this, but she did not pay, or agree to pay, the actual owners of the funds a bonus, but agreed to pay it to Abner P. Downer for his individual use. By the terms of the agreement the real lenders in this case were not to receive, either directly or indirectly, any thing beyond legal interest and the repayment of the money actually loaned. If an adult can be relieved from an apparently usurious contract made by his agent, upon the ground that the usurious premium was taken and retained by such agent without the principal's knowledge, authority or consent, how much stronger is the position of an infant, the disposition of whose property is environed by stringent legal rules, and who is always subject to the disabilities of nonage, rendering him incapable of binding himself, either by acquiescence or consent.

It is quite unnecessary to discuss the effect of a subsequent ratification by the principal, upon the loan, and the subsequent relations of the agent to the principal, for this case is destitute of evidence of ratification. It is enough to say that it would have no different effect than that of a subsequent ratification

in the cases of *Condit* v. *Baldwin,* and others above cited. The acceptance of the security, and bringing suit thereon by the principal with knowledge of the act of the agent, is not a ratification. (*Estevez* v. *Purdy, supra ; Stout* v. *Rider,* 12 Hun, 574.) Especially would this be so, if knowledge of the transactions attending the loan is not brought home to him.

The position urged by the counsel for the appellant that this loan must be regarded as an individual transaction between Abner P. Downer and the defendant, although he was described in the bond and mortgage as Abner P. Downer, guardian, etc., cannot be maintained. It is thought to be supported by a line of cases holding that an addition to the name of a contracting party, of his title or office, does not deprive the contract of its personal character. These authorities have no application to this case. They relate only to the liability of the person employing such title in an action between him and a third party. (*Sutherland* v. *Carr,* 85 N. Y. 110.) The question here is that of the ownership of the moneys represented by this mortgage, and is to be determined by the principles governing the ownership and management of trust estates. The words " guardian, etc.," inserted in the securities in question, operated as notice to the defendant Longyor, of the rights of the wards of whom Downer was guardian. (*Pendleton* v. *Fay,* 2 Paige, 202 ; *Budd* v. *Munroe,* 18 Hun, 316 ; *Duncan* v. *Jaudon,* 15 Wall. 165 ; *Shaw* v. *Spencer,* 100 Mass. 389 ; 1 Am. Rep. 115.)

It is repugnant to the equitable principles controlling the management and disposition of trust estates to say that a trustee can acquire an interest in trust property as against his *cestuis que trust,* merely by dealing with it in his individual name. (2 Perry on Trusts, § 836.) The circumstance that a trustee has given a bond for the faithful performance of his duties does not affect the application of these principles. Such security is usually given upon the appointment of a trustee by a court, and in the case of many other trusts, and yet it has never been supposed that this fact in any way impaired the remedies open to the beneficiaries of a trust, or had any

other effect than to give them the additional security furnished by the bond.    The *cestuis que trust* have the option to prosecute the trustee and his bond, or to follow and reclaim the property. (2 Perry on Trusts, § 843.)

In conclusion we say that, while there may be trusts of such a character that an illegal and usurious loan of the funds belonging to them will render the securities taken therefor void, in the case at bar we are satisfied that it would be inconsistent with well-established principles to hold that the loaning of the moneys of an infant by his legal guardian is usurious, although the guardian exacted more than lawful interest for the loan.

The judgment appealed from should, therefore, be affirmed. All concur.

Judgment affirmed.