## GERARD *et al. v.* McCORMICK.

*(Common Pleas of New York City and County, General Term.* February 10, 1890.)

1. PAYMENT—CHECK OF AGENT—NOTICE OF PRINCIPAL'S RIGHTS.
   One who accepts the check of "W. B., Agent Glass Buildings," in payment of his individual debt, has sufficient notice to put him on inquiry as to the rights of the maker's principal.

2. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.
   An action by the principal to recover the money obtained on the check was tried on the theory of the answer, that B. borrowed of defendant as agent of the plaintiff, and that the money was returned by the check in question. *Held,* that alleged newly-discovered evidence to the effect that the check was paid from the proceeds of a loan procured by B. by a mortgage on his individual property, and deposited by him the same day to the credit of his agency account, which was almost exhausted, was inconsistent with, and immaterial to, the issues raised by the answer, and not available to defendant as ground for a new trial.

Appeal from trial term.

Action by Sarah M. Gerard and others against James McCormick. There was a verdict for plaintiffs, and an order denying a motion for a new trial, and defendant appeals.

Argued before BOOKSTAVER and BISCHOFF, JJ.

*Fleischman & May,* (*Samuel Fleischman, of counsel,*) for appellant. *H. Kettell,* for respondents.

BOOKSTAVER, J. The complaint, in effect, alleged that the defendant, on or about the 19th of September, 1882, received the sum of $501.25, being the money of the plaintiffs, to their use. The answer is, in effect, a general denial, and as a separate defense, sets up a loan made by defendant, on or about September 19, 1882, to one William Boswell, as agent for plaintiffs, for their use, of the sum of $500, which was repaid with interest. Under these pleadings the plaintiffs proved that they together owned the premises 87 and 89 Wall street, known as the "Glass Buildings." William Boswell was for many years plaintiffs' agent to collect the rent of these buildings, to deposit the same in bank, pay the taxes, Croton rates, insurance, interest on the mortgage on the premises, and such repairs as the plaintiffs directed to be made on the premises, and to apportion and pay over the net balance to the various owners, which he did by check signed "WILLIAM BOSWELL, Agent Glass Buildings." Boswell kept two accounts in the Corn Exchange Bank, one under the name of "William Boswell, Agent Glass Buildings," and the other the individual account in his own name. Boswell had the full confidence of his employers, who had no suspicion that he was not honestly carrying on his agency, until in February, 1887, when he confessed to one of the owners that he had been for a long time misappropriating the rents, and that, among other things, he had, during a period of several years, retained out of the rents collected by him the money to pay the taxes on the buildings, about $1,700 per annum, but had not paid those taxes. By reason of this misappropriation he had been at all times indebted to the plaintiffs since the year 1879, and still owed them several thousand dollars. On the trial it appeared that the defendant, who is a stock-broker, loaned Boswell $500 on or about the 31st of August, 1882. When the loan was made, Boswell deposited, as collateral security thereto, his individual property. About two weeks thereafter this loan was repaid by a check for $501.25, signed "WILLIAM BOSWELL, Agent Glass Buildings," whereupon the collateral was surrendered to him. The testimony of the defendant, we think, does not show that he looked upon the transaction as a borrowing for the account of the owners, although he so stated

in his answer. What he testified to shows that he made the loan in the usual way, to Boswell individually, and at the end of two weeks received payment therefor; and he adds that he had, at the time of receiving the check, no idea, and did not suppose, that the check represented money belonging to the plaintiffs in this action; that he had no idea other than that the check represented money belonging to Boswell, and further says: "I made the loan with him. He gave me the security, and I gave him the check; and when he returned it I gave him his security, and he gave me the check." Upon this state of facts, two questions only were presented to the jury for their determination, namely, whether the money was plaintiffs', and whether the defendant had sufficient notice to put him on inquiry, because it cannot be said that the testimony in any way sustained the defense set up by him in his answer. On both of these questions the jury found in favor of the plaintiffs, and we think the evidence sufficient to sustain such finding.

The appellant contends that the signature to the check, to-wit, "WILLIAM BOSWELL, Agent Glass Buildings," was not sufficient notice to put him on inquiry, and cites in support of such contention *Ford* v. *Bank*, 13 Wkly. Dig. 352. The case, appearing only in the Digest, is meagerly reported. The action was brought against the bank for debiting a check, drawn in proper form against an account kept with one C. F. Norton, agent, and crediting its amount to another account which it had with C. F. Norton. It does not appear from the report that the bank had any knowledge except what might be inferred from the word "agent." The court held that the defendant was not liable, because a party must have noticed that the money was misappropriated. This decision, doubtless, was based on the fact that the defendant was a bank, and was bound to presume, when a check was drawn in proper form against an account kept with the depositor as a trustee, that the customer is in the course of lawfully performing his duty, and is bound to honor his check accordingly. On no other theory do we see how that decision could be sustained. In *Baker* v. *Bank*, 16 Abb. N. C. 458, the court of appeals holds that the bank is liable, and say: "The bank, having notice of the character of the fund, could not appropriate it to the debt of Wilson & Bro., even with their consent, to the prejudice of the *cestuis que trustent*." It is also reported in 16 Wkly. Dig. 531, where the general term of the supreme court says "that where an agent deposits the money of his principal with a bank, in an account kept by him as agent, * * * the funds will be regarded as the property of his principal, so far as they remain undrawn by the agent, and the bank will not have the right to apply the same upon the agent's pre-existing individual debt." The words of the signature, after the name, were not merely descriptive of the person. *Fellows* v. *Longyor*, 91 N. Y. 331. In that case the court says: "These authorities [meaning those which hold that such additions are merely of descriptions] have no application to this case; * * * the question here is that of the ownership of the moneys, * * * the words 'guardian, etc.,' * * * operated as notice to the defendant [Longyor] of the rights of the wards of whom Downer was guardian,"—citing a number of authorities. We are therefore of the opinion that the judgment should be affirmed, with costs.

After the trial the defendant made a motion for a new trial upon the ground of newly-discovered evidence. The case was tried on the theory of the answer, that Boswell borrowed of defendant as agent of the plaintiffs, and that the money was returned by the check in question. The jury found against the defendant upon this; and the alleged newly-discovered evidence was to the effect that the check in suit was paid out of money which Boswell deposited the same day in this account, and that before such deposit there was only nine dollars to Boswell's credit in this account; that the deposit of that date was made from the proceeds of a loan procured by Boswell by mortgage on his individual property. In other words, defendant wishes to prove that

Boswell paid with his own money a loan which, according to the answer and the theory held at the trial, was made to the plaintiffs. This is a manifest inconsistency, and such evidence could not avail the defendant, at least until there had been an amendment to the answer. Such evidence is immaterial to the questions raised by the pleadings. Conceding that Boswell used the money received for rents for his own purpose, yet, when he restored or made good the amount *pro tanto,* by depositing other moneys in the trust account, the money so deposited became impressed with the trust in favor of the principals, and was substituted for the original rents, and subject to the same equities. *Van Alen* v. *Bank,* 52 N. Y. 5; *Baker* v. *Bank,* 16 Abb. N. C. 458. Besides, it appears from the papers submitted that Boswell was in constant communication with the defendant. The items were plainly written in the various accounts; and we think that defendant could, with proper diligence, have discovered this fact, and that the order denying a new trial was proper, and should be affirmed, with cost.