AMERICAN PRESERVERS CO. v. COLUMBIA INV. CO.

(Superior Court of Buffalo, General Term. January 10, 1893.)

TRUSTS—FOLLOWING TRUST FUNDS.

Defendant received a check, signed in the name of plaintiff by his agent, in payment of property sold by defendant to the agent as an individual. The agent then procured his individual note to be discounted at bank, pledging the property purchased from defendant as collateral security, and he deposited the proceeds to plaintiff's credit. Afterwards, defendant presented the check, and the bank paid it. *Held*, that plaintiff could not recover so much of the amount received by defendant on the check as represented by the proceeds of the note, but only the difference between the amount of such proceeds and the amount of the check. 28 N Y. Supp. 782, reversed.

Appeal from trial term.

Action by the American Preservers Company against the Columbia Investment Company. From a judgment entered on a verdict directed by the court in favor of plaintiff, and from an order denying a motion for a new trial (28 N. Y. Supp. 782), defendant appeals. Reversed.

Argued before TITUS, C. J., and WHITE, J.

N. W. Norton, for appellant.
Simon Fleischmann, for respondent.

WHITE, J. The plaintiff is a foreign corporation engaged in the business of manufacturing and selling fruit preserves and jellies in different states. Its business in this state was conducted by Charles F. Tomes, who had his office in this city. Tomes was a general agent of the plaintiff in conducting its business. The plaintiff kept an account with the Manufacturers' & Traders' Bank, and Tomes was authorized to draw checks in plaintiff's name for use in its business only. On November 7, 1892, Tomes was indebted to the plaintiff in the sum of $2,800 on account of moneys belonging to the plaintiff, theretofore embezzled by him. On that day, Tomes purchased from the defendant, in his own name, as an individual, and not as the agent of the plaintiff, $1,000 of its capital stock, and paid that amount for the stock, with the plaintiff's check. On the same day, but before paying for or receiving the stock, Tomes had arranged with the bank for the discount by it of his note for $1,000, and to accept the stock as security for the note; and this arrangement was carried out between Tomes and the bank immediately upon the receipt of the stock by him, on November 7, 1892. Tomes' note was discounted by the bank on the faith of the stock pledged to it by him as security for his note. The discount on the note was $18.10. For the proceeds of the discount, the bank gave to Tomes, as an individual, and not as agent, its teller's check for $981.90, which he deposited to the plaintiff's credit for the purpose and with the intention on his part of making the account good for the check which he had given to the defendant. On the 9th day of November, 1892, in due course of business, the check which Tomes had given to the defendant was presented at the bank and paid. The defendant knew nothing of the transaction between Tomes and the bank, nor did the plaintiff know until several months thereafter that Tomes was indebted to it, or that he had misappropriated any of its property. The plaintiff now seeks to recover from the defendant the $1,000 which it drew from the plaintiff's bank account in payment for the stock which it sold and delivered to Tomes.

It clearly appears that, when he purchased the stock, Tomes intended to pledge it as collateral security for his note, which the bank had agreed to discount for him before he made the purchase, and to use the proceeds of the discount to pay for the stock. It is equally clear that, by depositing the proceeds of the discount to the credit of the plaintiff, he did not intend that such proceeds should become the property of the plaintiff, but that, on the contrary, he

did intend to apply those proceeds in payment of his stock, by having them paid to the defendant. His plan for the accomplishment of his purpose was executed, and the defendant received its pay for the stock, to the extent of $981.90, from those proceeds. In form, those proceeds became the property of the plaintiff instantly upon their deposit to its credit by Tomes, but the right to those proceeds, as between the plaintiff and defendant, is to be determined upon equitable principles; and if, in equity and good conscience, the defendant should be allowed to retain the $981.90 of the money it received, then, to that extent, the plaintiff must fail. No question is made but that, to the extent of $18.10, it should succeed. The check was taken by the defendant in payment for the stock. It was payable forthwith, on presentation. Possibly, Tomes could have used the proceeds of his note discounted by the bank in payment of his indebtedness to the plaintiff, or for any other purpose, and thereby have defrauded the defendant out of the price of the stock. The fact is, however, he did not do nor attempt to do any fraudulent act in connection with this transaction, but honestly carried out the plan adopted by him for purchasing and paying for the stock; and, as it seems to me, it would be a great injustice for the courts to undo what Tomes did honestly, and in the best of faith. In view of the fact that the $981.90 was advanced by the bank on the faith of the stock, equity and good conscience would seem to require payment for the stock by the plaintiff before it could appropriate the money to itself. All his acts in purchasing and paying for this stock should be treated as one single transaction, and the act of depositing the $981.90 to the plaintiff's credit should not be singled out and separated from the others, as a basis for an equitable claim in favor of the plaintiff against the defendant, after the moneys raised on the faith of the property it sold have been actually paid to it.

The facts in the case at bar differ materially from those in Gerard v. McCormick (Com. Pl. N. Y.) 8 N. Y. Supp. 860. Conceding the fact to be that in the Gerard Case the court, in denying the defendant's motion for a new trial, assumed that Boswell, the agent, had deposited his own funds to the credit of his agency account, from which he paid his individual debt, the defendant, McCormick, had not parted with any property, upon the faith of which Boswell had raised the money which he deposited to his agency account. In the case at bar the money which Tomes deposited to the plaintiff's credit was raised upon the faith of the stock parted with by the defendant. Nor does it appear in that case that the money raised by Boswell upon his individual property, and deposited to his agency account, was so raised or deposited for the sole purpose of paying his individual debt. For aught that appears in the report of the case, the object of Boswell, in raising and depositing the money as he did, was to pay and make good, pro tanto, his shortage in his agency account. I am of the opinion that if, instead of depositing the money raised on the stock and his note in the bank, Tomes had placed it in the hands of the plaintiff, with a full statement of all the facts, including the fact of his embezzlement and indebtedness to the plain-

tiff, with instructions to the plaintiff to pay the same to the defendant, thereupon the equitable title to the money would have vested in the defendant, and that its right to the money would, even in such a case, be superior to that of the plaintiff. Much more is the right of the defendant superior as the case stands, because, as a matter of fact, until the payment was made to the defendant, Tomes retained actual physical dominion and control over those moneys, or the credit obtained on their deposit. There can be no doubt that if Tomes had intended the $981.90 as a payment, pro tanto, of his indebtedness to the plaintiff, it would have been impressed with a trust in its favor instantly upon the deposit being made, or, in the absence of any intent or purpose on the part of Tomes when he made the deposit, the same result would have followed; but what is here said is based upon the assumption that Tomes' intent and purpose were to use the money in paying for the stock, and that such is the fact seems beyond question, upon the evidence. Tomes had an absolute right to apply or have the $981.90 applied in payment for the stock, and the manner or mode of exercising that right should not be permitted to destroy it, as to the defendant, whose property was the effectual means of raising the money which it received. The defendant, in accepting the plaintiff's check for the stock, took only the risk of the funds drawn upon it being in fact the property of the plaintiff. In fact, those funds were raised for the benefit of the defendant, upon the faith of property sold by it, and paid for with a check against those funds, and upon which they were drawn. The intent and purpose of Tomes in the transaction determine its effect. That purpose and intent, as we have seen, were to purchase and pay for the stock with money raised by him individually on the faith of the stock itself, and he accomplished his purpose. In the absence of the special facts, and the purpose and intent of Tomes, to which attention has been called, the law would determine the effect of his acts, and impute to him an intent to pay his indebtedness to the plaintiff, pro tanto; but, in equity and good conscience, he was not at liberty so to use or dispose of the stock purchased from the defendant, or defraud it of the purchase price. On the contrary, fair dealing demanded that the stock be so used and disposed of as to insure the payment for it to the defendant. That has been done, and should not be undone. The judgment and order appealed from should be reversed, and a new trial ordered, with costs to abide the event.